# *United States Court of Appeals*
### FIFTH CIRCUIT
### OFFICE OF THE CLERK

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE**
**NEW ORLEANS, LA 70130**

April 03, 2017

Mr. Michael L. McConnell
Middle District of Louisiana, Baton Rouge
United States District Court
777 Florida Street
Room 139
Baton Rouge, LA 70801

     No. 15-30538   USA v. Jermaine Chapman, et al
               USDC No. 3:13-CR-57-4

Dear Mr. McConnell,

Enclosed is a copy of the three (3) judgments issued this case as
the mandate, and a copy of the court's opinion.

                    Sincerely,

                    LYLE W. CAYCE, Clerk

                    *Dantrell Johnson*

                    By: _____
                    Dantrell L. Johnson, Deputy Clerk
                    504-310-7689

cc w/encl:
     Mr. Christopher Albert Aberle
     Ms. Mary Patricia Jones
     Mr. Robert William Piedrahita
     Ms. Lauren Kelsey Rivera
     Mr. Joseph Kelsey Scott, III
     Mr. Michael Sean Walsh

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-30538

D.C. Docket No. 3:13-CR-57

United States Court of Appeals
Fifth Circuit

**FILED**

March 10, 2017

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

      Plaintiff - Appellee

v.

JERMAINE J. CHAPMAN, also known as Dump Truck,

      Defendant - Appellant

Appeal from the United States District Court for the
Middle District of Louisiana, Baton Rouge

Before STEWART, Chief Judge, and KING and DENNIS, Circuit Judges.

## J U D G M E N T

This cause was considered on the record on appeal and was argued by counsel.

It is ordered and adjudged that the judgment of the District Court is affirmed.

**Certified as a true copy and issued
as the mandate on Apr 03, 2017**

**Attest:** *Lyle W. Cayce*

**Clerk, U.S. Court of Appeals, Fifth Circuit**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

---

No. 15-30538

---

D.C. Docket No. 3:13-CR-57

United States Court of Appeals
Fifth Circuit

**FILED**

March 10, 2017

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

        Plaintiff - Appellee

v.

CHARLES BOYER, also known as Slim,

        Defendant - Appellant

Appeal from the United States District Court for the
Middle District of Louisiana, Baton Rouge

Before STEWART, Chief Judge, and KING and DENNIS, Circuit Judges.

## J U D G M E N T

This cause was considered on the record on appeal and was argued by counsel.

It is ordered and adjudged that the judgment of the District Court is affirmed.

Certified as a true copy and issued
as the mandate on **Apr 03, 2017**

Attest: *Lyle W. Cayce*

**Clerk, U.S. Court of Appeals, Fifth Circuit**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

_____

No. 15-30538

_____

D.C. Docket No. 3:13-CR-57

United States Court of Appeals
Fifth Circuit

**FILED**

March 10, 2017

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

> Plaintiff - Appellee Cross-Appellant

v.

JEFFERY D. PERRY,

> Defendant - Appellant Cross-Appellee

Appeals from the United States District Court for the
Middle District of Louisiana, Baton Rouge

Before STEWART, Chief Judge, and KING and DENNIS, Circuit Judges.

## J U D G M E N T

This cause was considered on the record on appeal and was argued by counsel.

It is ordered and adjudged that the judgment of the District Court is affirmed in part and vacated in part, and the cause is remanded to the District Court for further proceedings in accordance with the opinion of this Court.

**Certified as a true copy and issued
as the mandate on Apr 03, 2017**

**Attest:** *Lyle W. Cayce*

**Clerk, U.S. Court of Appeals, Fifth Circuit**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 15-30538

United States Court of Appeals
Fifth Circuit

**FILED**

March 10, 2017

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

     Plaintiff - Appellee Cross-Appellant

v.

JERMAINE J. CHAPMAN, also known as Dump Truck, CHARLES BOYER, also known as Slim,

     Defendants - Appellants

JEFFERY D. PERRY,

     Defendant - Appellant Cross-Appellee

Appeals from the United States District Court
for the Middle District of Louisiana

Before STEWART, Chief Judge, and KING and DENNIS, Circuit Judges.

KING, Circuit Judge:

Defendants Jeffery Perry, Jermaine Chapman, and Charles Boyer appeal their convictions for various offenses related to their participation in a drug trafficking conspiracy. The Government cross-appeals Perry's sentence as to his dual firearms convictions under 18 U.S.C. § 924(c), arguing that the district court erred in failing to apply the 25-year mandatory minimum sentence for second or subsequent § 924(c) convictions to one of Perry's

No. 15-30538

convictions.  Finding error only on the latter issue, we AFFIRM in part and VACATE and REMAND in part.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Facts

This case centers on a cocaine and crack dealing organization operated by Defendant Jeffery Perry and based in Baton Rouge, Louisiana.  Perry's organization consisted of many operatives, including Defendants Jermaine Chapman (aka "Dump Truck") and Charles Boyer (aka "Slim"), who assisted Perry by purchasing drug-making supplies, weighing and bagging the drugs, retrieving drugs from storage locations, interacting with customers who were buying drugs, and disposing of kilogram wrappers.  Over the years, Perry used various houses, referred to as "click houses," in South Baton Rouge, which were largely owned by his family, as distribution centers and headquarters for the organization.  Chapman and Boyer at various times resided in the click houses, along with other operatives in Perry's organization.  Perry regularly used the kitchens of the click houses to cook crack.  Customers who came to the click houses to purchase drugs sometimes used a gun as payment, and Perry stored some of the bartered guns in at least one of the click houses, 221 Evergreen Street.  Perry had secret compartments for storing drugs installed over a doorway and under the kitchen sink of the Evergreen Street click house.  Chapman knew about and used the secret compartments.

Perry and his associates had several encounters with the Baton Rouge Police Department (BRPD) and Drug Enforcement Administration (DEA) over the years, including selling drugs to DEA confidential informants.  BRPD also conducted periodic surveillance and executed multiple search warrants at the click houses, in sum seizing crack, cocaine, drug paraphernalia, large quantities of cash, and guns.  In addition to selling drugs, Perry and his operatives also engaged in robbery, carjacking, and unlawful possession of

2

guns.  In September 2011, after a multi-year investigation by the DEA and the BRPD, Perry and Chapman were arrested while driving from Houston to Baton Rouge in two separate vehicles with two kilograms of cocaine in Chapman's vehicle.  Boyer was later arrested in California and extradited to Louisiana for trial.

## B.  Trial

In July 2013, the grand jury returned a 19-count second superseding indictment against Perry, Chapman, Boyer, and five other associates.[1]  They were charged with conspiracy to distribute and possess with intent to distribute 280 grams or more of cocaine base and 5 kilograms or more of cocaine, in violation of 21 U.S.C. § 846(a)(1).  Perry and Boyer were charged with carjacking and use of a firearm in commission thereof.  Perry and Chapman were each also charged with other drug possession and distribution crimes, along with several gun-related crimes.  In relevant part, Count 6 of the indictment charged Perry with knowingly discharging a firearm during and in relation to drug trafficking activity—namely, the drug conspiracy (charged in Count 1) and a carjacking incident (charged in Count 5), in violation of 18 U.S.C. § 924(c)(1)(A)(iii) and § 924(c)(2).  And Count 10 of the indictment charged Perry and Chapman each with knowingly possessing a firearm in furtherance of drug trafficking activity—namely, the drug conspiracy (charged in Count 1) and possession with intent to distribute cocaine and 28 grams or more of cocaine base (charged in Count 9)—in violation of 18 U.S.C. § 924(c)(1)(A) and § 924(c)(2).

---

[1] Seventeen of the counts charged Perry, Chapman, or Boyer, one of which was dismissed during the trial.  Only one of the five other associates originally charged was tried; the other four reached plea agreements with the Government and, pursuant to those plea agreements, testified at trial for the Government.

No. 15-30538

Prior to trial, Boyer moved to sever his trial from that of his co-defendants. Boyer noted that he was charged with only three counts of the indictment, was mentioned in only four of the 36 paragraphs supporting the conspiracy charge, and did not participate in the conspiracy for its duration because he moved to California and left the conspiracy in 2010, the year before the indictment was returned. Given his relatively minor role, Boyer argued that he would be unfairly prejudiced by being jointly tried alongside the other defendants. The district court denied the motion, noting the "well-recognized preference . . . for joint trials of defendants who are indicted together." The district court concluded that any possible prejudice to Boyer would be sufficiently mitigated through jury instructions and the court's continued monitoring of the case as it progressed to trial.

The trial commenced in September 2014. After five days of trial, the presiding district judge became ill, and Judge Shelly Dick replaced him as the judge presiding over the trial after certifying that she was familiar with the record. *See* Fed. R. Crim. P. 25(a)(2). After testimony from over 40 witnesses, including testimony from six co-defendants who had pleaded guilty pursuant to plea agreements, and the introduction of voluminous amounts of evidence, the trial concluded on September 22, 2014.[2] The district judge instructed the jury to separately consider each defendant and count, as well as the evidence as it pertained to each defendant and count. The judge also instructed the jury on *Pinkerton* liability, *see Pinkerton v. United States*, 328 U.S. 640 (1946), explaining: "A conspirator is responsible for offenses committed by other conspirators if the conspirator was a member of the conspiracy when the offense was committed, and if the offense was committed in furtherance of, or

---

[2] After the Government rested, and again at the close of evidence, all defendants moved for judgment of acquittal, and the motions were denied each time.

No. 15-30538

as a foreseeable consequence of, the conspiracy." The jury returned its verdict on September 23. In relevant part, the jury found Perry, Chapman, and Boyer each guilty of conspiracy (Count 1), found Perry guilty of two firearms offenses (Counts 6 and 10, which both charged violations of 18 U.S.C. § 924(c)), and found Chapman guilty of one firearms offense (Count 10).[3] And Boyer was found not guilty of the other two counts with which he was charged, both related to carjacking.

## C. Motions for New Trials

On October 7, Boyer moved for a post-trial judgment of acquittal or, in the alternative, a new trial. He argued that the evidence did not support his conviction for conspiracy and that he was unfairly prejudiced by being tried alongside his more culpable co-defendants. The district court denied the motion, concluding that substantial evidence supported Boyer's conspiracy conviction and there were "no extraordinary circumstances" that would justify a new trial.

On March 10, 2015, Perry filed a "Motion for Evidentiary Hearing and New Trial." Perry claimed that, after the trial concluded, he discovered new evidence related to one of the counts under which he was convicted—Count 10—for possession of two firearms in furtherance of drug trafficking activity. This charge related to guns found in 2010 in the secret compartment under the kitchen sink of the Evergreen Street click house. In support of his motion, Perry attached an undated declaration by his counsel stating that a man arrested at the click house at the time the police discovered the guns, John West, had revealed to counsel that he owned the guns and stored them at the Evergreen click house "without . . . Perry's knowledge" and with the intent to

---

[3] The jury found the only other remaining co-defendant not guilty of conspiracy (Count 1), the only count with which he was charged.

No. 15-30538

sell them.   Based on this allegedly new evidence, Perry requested an evidentiary hearing and a new trial.   Chapman, who was also convicted on Count 10, successfully moved to adopt Perry's motion as filed on his own behalf. The district court denied the joint motion without a hearing, concluding that the allegedly new evidence was not likely to result in either defendant's acquittal on Count 10.   The court found that, contrary to indicating Perry's and Chapman's innocence, this evidence "strongly support[ed] the notion that West was a co-conspirator . . . [i]n which case, even if Perry and Chapman did not own the gun and were ignorant of its presence, they would still be criminally liable under the *Pinkerton* doctrine."

## D. Sentencing

Perry's sentencing was held on August 19, 2015.   At issue, in relevant part, were the sentences for his dual firearms convictions in violation of 18 U.S.C. § 924(c)—Count 6 (discharge of a firearm during and in relation to the drug conspiracy and a carjacking incident) and Count 10 (knowingly possessing a firearm in furtherance of the drug conspiracy and possession with intent to distribute).   The pre-sentence report stated that the mandatory minimum terms for these convictions were ten and five years, respectively. The Government objected, arguing that Count 10 constituted a second conviction under 18 U.S.C. § 924(c) and therefore the mandatory minimum for Count 10 should be 25 years.   *See* 18 U.S.C. § 924(c)(1)(C)(i) ("In the case of a second or subsequent conviction under [18 U.S.C. § 924], the person shall . . . be sentenced to a term of imprisonment of not less than 25 years . . . ."); *Deal v. United States*, 508 U.S. 129, 131–33 (1993) (holding that § 924(c)'s enhanced penalty for a second or subsequent conviction applies when the defendant is convicted of multiple § 924(c) counts in a single proceeding). The probation officer agreed with these objections. The district court, however, declined to impose the 25-year mandatory minimum sentence on Count 10,

No. 15-30538

instead imposing the five-year sentence originally recommended in the pre-sentence report (plus the ten-year sentence on Count 6).  The court reasoned that it could not impose the 25-year mandatory minimum because it was unable to determine "which [§ 924(c)] conviction the jury concluded first because of the secrecy of the jury deliberations," and thus the court did not know to which conviction, Count 6 or Count 10, the 25-year mandatory minimum should be applied.  Perry was ultimately sentenced to life imprisonment plus 15 years.  Chapman was sentenced to a 45-year term of imprisonment and Boyer to a 10-year term of imprisonment.

## II.  PERRY'S SENTENCE UNDER 18 U.S.C. § 924(c)

The Government cross-appeals the district court's calculation of the mandatory minimum sentence on one of Perry's two convictions under 18 U.S.C. § 924(c), arguing that the district court erred in failing to impose the 25-year mandatory minimum.  We review the district court's interpretation and application of § 924(c) de novo.  *United States v. Kaluza*, 780 F.3d 647, 653 (5th Cir. 2015).

Perry was convicted of two counts under 18 U.S.C. § 924(c).  Section 924(c) provides additional penalties for "any person who, during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm."  18 U.S.C. § 924(c)(1)(A).  Ordinarily, the mandatory minimum sentence for a first conviction under § 924(c) is five years.[4]  *Id*. § 924(c)(1)(A)(i).  The mandatory minimum for a "second or subsequent conviction" under § 924(c) is 25 years.[5]  *Id*. § 924(c)(1)(C)(i).  The Supreme Court, in *Deal v. United States*, held that

---

[4] If the firearm was brandished, the mandatory minimum is seven years; if it was discharged, the mandatory minimum is ten years.  18 U.S.C. § 924(c)(1)(A)(ii)–(iii).

[5] Any sentence under § 924(c) must be consecutive to any other sentence a defendant receives.  18 U.S.C. § 924(c)(1)(D)(ii).

this 25-year mandatory minimum applies when a defendant is convicted of multiple § 924(c) counts in a single proceeding.  508 U.S. at 131–33.  It explained that "conviction" as used in § 924(c)(1) means "the finding of guilt by a judge or jury" rather than "the entry of a final judgment on that finding." *Id.* at 131–32.  If "conviction" had this latter meaning, it would render the statute incoherent because a judgment of conviction necessarily includes an already imposed sentence, and an already imposed sentence cannot be enhanced. *Id.* at 132.  The Court further reasoned that "findings of guilt on several counts are necessarily arrived at successively in time," and thus, the 25-year enhanced penalty could be applied to a second § 924(c) conviction within the same proceeding. *Id.* at 132–33 & n.1.

At Perry's sentencing, the district court recognized *Deal*'s holding, but explained that *Deal* "did not address whether . . . when there are two convictions in the same charging instrument[,] how the court is to consider which conviction came first and which conviction came second."  This issue was relevant for Perry's sentencing because one of his § 924(c) convictions (Count 10) carried a mandatory minimum of five years since it was for mere possession of a firearm, while his other § 924(c) conviction (Count 6) carried a mandatory minimum of ten years since it was for discharge of a firearm.  The district court explained that, due to the secrecy of jury deliberations, it had no way of determining which of the two convictions the jury arrived at first, and thus, it could not determine to which of these convictions the 25-year enhanced penalty should apply.   Accordingly, the district applied the rule of lenity and "decline[d]" to apply the enhanced penalty to either of Perry's two § 924(c) convictions.

The district court erred in declining to apply the 25-year enhanced penalty to Perry's second conviction under § 924(c).  Under *Deal*'s reasoning, Perry's two convictions under § 924(c) necessarily included a first § 924(c)

No. 15-30538

conviction and a second § 924(c) conviction. *See Deal*, 508 U.S. at 133 n.1 ("[F]indings of guilt on several counts are necessarily arrived at successively in time."). It is true that § 924(c) is silent on how multiple convictions should be sequenced for sentencing purposes, and it is not possible for the court to know the sequence in which the jury reached the convictions.

To resolve this ambiguity, we employ a well-known interpretive tool: the rule of lenity. "The rule of lenity requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them." *Kaluza*, 780 F.3d at 669 (quoting *United States v. Santos*, 553 U.S. 507, 514 (2008) (plurality opinion)). The application of the rule of lenity in this context is a matter of first impression for this court. But all of our sister circuits that have considered this issue have held that the rule of lenity requires that the conviction with the lowest mandatory minimum sentence be considered the first conviction for the purposes of applying the 25-year enhanced penalty. *See United States v. Pierce*, 785 F.3d 832, 846–47 (2nd Cir. 2015); *United States v. Washington*, 714 F.3d 962, 970–71 (6th Cir. 2013); *United States v. Major*, 676 F.3d 803, 814–15 (9th Cir. 2012). In this way, the defendant's aggregate statutory minimum sentence is minimized and the rule of lenity is satisfied. We agree with this approach. Applied here, this means that Count 10 should be considered Perry's first § 924(c) conviction (carrying five years) and Count 6 should be the second § 924(c) conviction (carrying 25 years due to the enhanced penalty), for a total statutory minimum sentence on the § 924(c) counts of 30 years.[6]

In declining to apply the 25-year enhanced penalty, the district court stated that, lacking any precedent from this circuit, it was "persuaded by the

---

[6] As opposed to Count 6 being considered the first conviction (carrying 10 years) and Count 10 the second (carrying 25 years), for a total statutory minimum sentence of 35 years.

No. 15-30538

analysis" from the Ninth Circuit in *United States v. Major*.  But the Ninth Circuit in *Major* did not entirely decline to apply the 25-year enhanced penalty. To the contrary, the Ninth Circuit applied the enhanced penalty by concluding that, "when the district court does not have sufficient information to determine the order in which the jury made determinations of guilt during jury deliberations on multiple counts under section 924(c)," the rule of lenity required the district court to "order the convictions so that the mandatory minimum sentence is minimized." *Major*, 676 F.3d at 815.  In that case, the rule of lenity required that "one of the [§ 924(c)] brandishing counts, rather than a [§ 924(c)] discharging count . . . be the first conviction" because the former carried a lower mandatory minimum sentence.  *Id*.  Thus, *Major* does not lend support to the district court's decision not to apply the 25-year enhanced penalty at all.  Rather, *Major* supports our conclusion that, for the purposes of the enhanced penalty, the § 924(c) count with the lowest mandatory minimum sentence should be considered the first conviction.

On appeal, Perry does not dispute that § 924(c)'s 25-year enhanced penalty should be interpreted and applied in this manner.  Rather, he argues that the district court's failure to impose the penalty is excused by the fact that, in light of *United States v. Johnson*, 135 S. Ct. 2551 (2015), § 924(c)(3)(B)'s definition of "crime of violence" ("the risk of force definition") is unconstitutionally vague, *see* 18 U.S.C. § 924(c)(1)(A) (providing enhanced penalties for anyone who, "in relation to any *crime of violence* or drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm" (emphasis added)); *id*. § 924(c)(3)(B) (defining "crime of violence" as any felony "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense").  According to Perry, because this

No. 15-30538

definition is "conceivably unconstitutional," the district court did not err by failing to use it to enhance Perry's sentence.

Perry's argument is unavailing for several reasons.  First, as Perry concedes, he has not challenged his § 924(c) convictions or sentences on appeal. Rather than use this vagueness argument as a basis for appealing his § 924(c) convictions, Perry raises it only in response to the Government's cross-appeal of his § 924(c) sentences.  Second, Perry's argument regarding the vagueness of the risk of force definition is counter to *United States v. Gonzalez–Longoria*, in which we recently held that an identical definition of crime of violence in 18 U.S.C. § 16(b) was not unconstitutionally vague.[7]  831 F.3d 670, 672 (5th Cir. 2016) (en banc).  Third and finally, Perry's § 924(c) convictions are not affected by any alleged infirmity in the risk of force definition of crime of violence because the convictions' predicate offenses are not based on his having committed a crime of violence.  Rather, they are based on his having committed drug trafficking crimes.  *See* 18 U.S.C. § 924(c)(1)(A) (providing for increased penalties for "any person who, during and in relation to any crime of violence *or drug trafficking crime* . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm" (emphasis added)).  Drug trafficking crimes are the predicate offenses for both of Perry's § 924 counts: Count 10 charged possession of firearms in furtherance of drug trafficking crimes—

---

[7] Perry argues that a forthcoming Supreme Court decision may affect this holding. *See Lynch v. Dimaya*, No. 15-1498, 137 S. Ct. 31, 2016 WL 3232911 (Sept. 29, 2016) (granting certiorari on the question of whether § 16(b)'s definition of crime of violence, as incorporated in the Immigration and Nationality Act, is unconstitutionally vague); *see also Dimaya v. Lynch*, 803 F.3d 1110, 1120 (9th Cir. 2015).  But we cannot deviate from our precedent based on "a mere 'hint' of how the [Supreme] Court might rule in the future."  *United States v. Alcantar*, 733 F.3d 143, 146 (5th Cir. 2013) (citing *In re Tex. Grand Prairie Hotel Realty, L.L.C.*, 710 F.3d 324, 331 (5th Cir. 2013)).  Rather, only an "unequivocal" intervening change in the law, *id.*, "such as by statutory amendment, or the Supreme Court, or [the] *en banc* court" would permit us to decline to follow our precedent, *Jacobs v. Nat'l Drug Intelligence Ctr.*, 548 F.3d 375, 378 (5th Cir. 2008).  Accordingly, Perry's arguments assailing the constitutionality of the risk of force definition are foreclosed by *Gonzalez–Longoria*.

namely, the drug conspiracy (charged in Count 1) and possession with intent to distribute cocaine and 28 grams or more of cocaine base (charged in Count 9). And Count 6 charged discharge of a firearm in furtherance of a drug trafficking crime—namely, the drug conspiracy (charged in Count 1).[8] These drug trafficking crimes qualify as predicate offenses for the purposes of § 924(c)'s enhanced penalty without reference to the risk of force definition. *See* 18 U.S.C. § 924(c)(1)(A).

Accordingly, we conclude that the district court erred in declining to apply the 25-year mandatory minimum sentence required by § 924(c)(1)(C) to one of Perry's § 924(c) convictions. We vacate Perry's sentence with regard to these convictions and remand with instructions that the district court recalculate his sentence on Counts 6 and 10 as set forth above.

---

[8] Count 6 also charged discharge of a firearm in furtherance of a carjacking incident (charged in Count 5). The Government argues that carjacking qualifies as a crime of violence under the other definition of "crime of violence" in § 924(c), ("the force definition"), *see* 18 U.S.C. § 924(c)(3)(A) (defining "crime of violence" as any felony "that has as an element the use, attempted use, or threatened use of physical force against the person or property of another"), not the risk of force definition, which is the definition Perry challenges as unconstitutionally vague on appeal. But even were carjacking to fall under the risk of force definition, this would not affect Perry's § 924(c) conviction under Count 6 because it also included the predicate offense of a drug trafficking crime, namely the drug conspiracy (Count 1). *See United States v. Privette*, 947 F.2d 1259, 1262 (5th Cir. 1991) (stating that "[a] conspiracy and its target crimes are separate offenses" for the purposes of § 924(c) and thus "could each support a separate § 924(c) conviction and sentence").

No. 15-30538

## III.  SUFFICIENCY OF THE EVIDENCE

Perry[9] and Boyer[10] challenge the sufficiency of the evidence to support their convictions for conspiracy to distribute and possess with intent to distribute 280 grams or more of cocaine base and 5 kilograms or more of cocaine, in violation of 21 U.S.C. § 846. We review challenges to the sufficiency of the evidence de novo, applying the same standard as applied by the district court: could a rational jury find that all elements of the crime were proved beyond a reasonable doubt? *United States v. Wise*, 221 F.3d 140, 147, 154 (5th Cir. 2000).  Though de novo, this review "is nevertheless 'highly deferential to the verdict.'"  *United States v. Bowen*, 818 F.3d 179, 186 (5th Cir. 2016) (per curiam) (quoting *United States v. Beacham*, 774 F.3d 267, 272 (5th Cir. 2014)). We "search the record for evidence . . . support[ing] the convictions beyond a reasonable doubt," *United States v. Mulderig*, 120 F.3d 534, 546 (5th Cir. 1997), and review the evidence "in the light most favorable to the verdict, accepting all credibility choices and reasonable inferences made by the jury," *Wise*, 221

---

[9] Although Perry's statement of the case states that "Perry appeals his conviction and sentence on all counts of the indictment," his issue statement and arguments relate only to his conviction on the conspiracy count.  While some of the other counts are predicated on the conspiracy count, Perry does not identify which counts should fail if the conspiracy count were to fail.  Because Perry has not addressed these other counts on appeal, he has waived any argument as to the sufficiency of the evidence on them.  *See* Fed. R. App. P. 28(a)(8)(A); *see also United States v. Reagan*, 596 F.3d 251, 254–55 (5th Cir. 2010) (holding that appellant who merely "list[ed] . . . points of error" without "further argument or explanation" had waived those issues for failure to brief).

[10] Boyer also separately appeals the district court's denial of his motions for judgment of acquittal under Federal Rule of Criminal Procedure 29, filed both at the close of the Government's case and at the conclusion of the trial.  But a motion for judgment of acquittal under Rule 29 merely "challenges the sufficiency of the evidence to convict."  *United States v. Hope*, 487 F.3d 224, 227 (5th Cir. 2007) (quoting *United States v. Lucio*, 428 F.3d 519, 522 (5th Cir. 2005)); *see also* Fed. R. Crim. P. 29(a) ("After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction.").  And an appeal of the denial of a motion for judgment of acquittal is reviewed de novo, just as a challenge to the sufficiency of the evidence is.  *See United States v. Wise*, 221 F.3d 140, 147, 154 (5th Cir. 2000).  Accordingly, we treat Boyer's appeal of the motion for a judgment of acquittal as a challenge to the sufficiency of the evidence and do not separately address it.

No. 15-30538

F.3d at 147.  In other words, "a defendant seeking reversal on the basis of insufficient evidence swims upstream." *Mulderig*, 120 F.3d at 546.

To convict a defendant of conspiracy to possess and distribute drugs under 21 U.S.C. § 846, the Government "must prove beyond a reasonable doubt: 1) the existence of an agreement between two or more persons to violate narcotics laws, 2) knowledge of the conspiracy and intent to join it and 3) voluntary participation in the conspiracy." *United States v. White*, 219 F.3d 442, 445 (5th Cir. 2000).  The agreement between co-conspirators need not be express or explicit; tacit agreement is sufficient.  *United States v. Shoemaker*, 746 F.3d 614, 623 (5th Cir. 2014).  And the agreement can be proved "with only circumstantial evidence" or "inferred from concert of action."  *Id.* (quoting *United States v. Virgen–Moreno*, 265 F.3d 276, 284–85 (5th Cir. 2001)).  "[M]ere presence at the scene or association with co-conspirators" is insufficient to support a conviction, but "they are factors that may be considered" in finding a conspiracy.  *United States v. Thomas*, 690 F.3d 358, 366 (5th Cir. 2012).  Further, a valid conviction can be based "on uncorroborated testimony of an accomplice or of someone making a plea bargain with the government, provided that the testimony is not incredible or otherwise insubstantial on its face." *Shoemaker*, 746 F.3d at 623 (quoting *United States v. Osum*, 943 F.2d 1394, 1405 (5th Cir. 1991)).  Testimony is not incredible as a matter of law "unless it pertains to matters 'that the witness physically could not have observed or events that could not have occurred under the laws of nature."  *Id.* (quoting *Osum*, 943 F.2d at 1405).  We now turn to the sufficiency of the evidence supporting Perry's and Boyer's convictions.

**A. Perry**

Viewing the evidence in the light most favorable to the jury's verdict, there was sufficient evidence to support Perry's conspiracy conviction.  Perry's primary argument on appeal is that the Government's evidence at trial "merely

No. 15-30538

established a buyer-seller relationship between Perry and a number of buyers";
it did not establish that Perry entered into an agreement with others with the
joint objective of possessing and distributing cocaine, as is required for a
conspiracy conviction.   In other words, Perry admits that he sold large
quantities of drugs in individual transactions to individual buyers, but
maintains that the evidence indicates that he did so alone, not in concert with
others.

It is true that simple drug transactions between a buyer and seller alone
do not amount to a drug conspiracy. *United States v. Delgado*, 672 F.3d 320,
333 (5th Cir. 2012) (en banc).   And "[m]ere . . . association alone . . . [is] not
sufficient to prove participation in a conspiracy." *United States v. Turner*, 319
F.3d 716, 721 (5th Cir. 2003).   But the Government's evidence showed more
than Perry simply engaging in individual drug sales and showed guilt by more
than mere association; it showed him repeatedly working in concert with many
others to possess and distribute crack and cocaine.   Numerous witnesses
testified that many individuals retrieved the drugs (from hiding spots and click
houses) that Perry sold to customers and handled drug sales on Perry's behalf
when he was absent.   And several co-conspirators testified that they and others
accompanied Perry on trips to Houston to replenish their drug supply.   Another
co-conspirator admitted to committing two robberies in furtherance of Perry's
drug operation and also explained the supporting roles of other co-conspirators
in the robberies.   There was also testimony that Perry sold drugs on credit,
which is "'strong evidence' of membership in a conspiracy because it indicates
a strong level of trust and an ongoing, mutually dependent relationship."
*Thomas*, 690 F.3d at 366 (quoting *United States v. Posada–Rios*, 158 F.3d 832,
860 (5th Cir. 1998)).   In addition to the testimony of alleged co-conspirators,
undercover video of controlled buys, security video footage, dash cam footage,

No. 15-30538

and police testimony were introduced into evidence, all of which demonstrated that Perry worked with others.

Perry counters that his relationships with his alleged co-conspirators "spanned different periods of time, . . . involved different people, different prices, different locations, and different methods of payment and delivery." But "[p]ersonnel changes do not defeat a finding of a single conspiracy." *United States v. DeLeon*, 641 F.2d 330, 334 (5th Cir. 1981). Nor is it necessary "for all co-conspirators to know each other or to work together on every transaction." *Id.* Based on the extensive evidence of "concert of action" amongst Perry and others, the jury could reasonably infer an agreement, as well as Perry's knowledge, intent, and voluntary participation. *United States v. Romans*, 823 F.3d 299, 311 (5th Cir. 2016) (quoting *United States v. Landry*, 903 F.2d 334, 338 (5th Cir. 1990)).

Finally, Perry challenges the credibility of the witnesses who testified against him, noting that most of the witnesses against him were testifying for the Government pursuant to plea agreements. However, in a challenge to the sufficiency of the evidence, this argument is inapposite. Rather, "the jury is the ultimate arbiter of the credibility of a witness," and we accept all credibility determinations by the jury, with few exceptions that Perry does not allege apply here. *Shoemaker*, 746 F.3d at 623 (quoting *Osum*, 943 F.2d at 1405); *Wise*, 221 F.3d at 147. Further, the "uncorroborated testimony of an accomplice or of someone making a plea bargain with the government" can support a conviction. *Shoemaker*, 746 F.3d at 623 (quoting *Osum*, 943 F.2d at 1405).

We conclude that sufficient evidence supports Perry's conspiracy conviction.

No. 15-30538

**B. Boyer**

Viewing the evidence in the light most favorable to the jury's verdict, there was sufficient evidence to support Boyer's conspiracy conviction. The jury heard testimony that Boyer lived at one of the click houses and was "always" there, retrieved and weighed drugs for Perry's customers, conducted drug sales on Perry's behalf when Perry was absent, stored guns in hidden locations in the click houses, pointed a gun at a man that Perry was robbing, and provided another associate of Perry's with the gun used in a carjacking. This is more than sufficient evidence from which the jury could reasonably find that Boyer participated in the conspiracy.

Boyer seemingly concedes that he participated in the conspiracy (albeit merely in exchange for drugs) but argues that his participation was limited to a minor "errand boy" role. He claims that his duties were limited to cleaning crack residue from the kitchen, running occasional errands for Perry, and buying and selling drugs on his own. But co-conspirator liability is not limited to those who play a major role; rather liability can attach to those who play a "minor role" as long as they "knowingly participate[] in some fashion in the larger objectives of the conspiracy." *United States v. Brown*, 727 F.3d 329, 339 (5th Cir. 2013) (quoting *United States v. Westbrook*, 119 F.3d 1176, 1189 (5th Cir. 1997)); *see also Salinas v. United States*, 522 U.S. 52, 64 (1997) ("[T]he supporters [of a conspiracy] are as guilty as the perpetrators."); *United States v. McKinney*, 53 F.3d 664, 672 (5th Cir. 1995) ("A defendant need only have had a minor role in the conspiracy, once it is shown that he voluntarily agreed to participate."). An individual "need not know all the details of the unlawful enterprise or . . . the exact number or identity of all the co-conspirators" in order to be liable as a co-conspirator. *Brown*, 727 F.3d at 339 (quoting *Westbrook*, 119 F.3d at 1189). Nor does "[t]he fact that a conspirator is not present at, or does not participate in, all of the conspiratorial

17

activities . . . exonerate him." *United States v. Ashley*, 555 F.2d 462, 467 (5th Cir. 1977). Accordingly, even assuming, arguendo, that Boyer played a relatively minor role in the conspiracy, he is not shielded from liability.

Boyer argues that he lacked the specific intent to participate in the conspiracy. To be liable as a co-conspirator, an individual must enter the agreement with the "specific intent that the underlying crime be committed." *Ocasio v. United States*, 136 S. Ct. 1423, 1429 (2016) (emphasis omitted) (quoting 2 K. O'Malley, J. Grenig & W. Lee, Federal Jury Practice and Instructions: Criminal § 31:03, p. 225 (6th ed. 2008)). But the Government need not prove an individual defendant's subjective intent, *United States v. Holmes*, 406 F.3d 337, 353 (5th Cir. 2005); rather, the jury may objectively infer specific intent based on the fact that the defendant intends the probable consequences of his actions, *United States v. Stoker*, 706 F.3d 643, 646–47 (5th Cir. 2013). The underlying crimes at issue here are drug possession with intent to distribute and drug distribution. There was sufficient evidence to infer Boyer's specific intent to possess and distribute drugs. Copious evidence was introduced that Boyer himself distributed drugs to buyers and that he took other actions in furtherance of the conspiracy, such as retrieving and weighing drugs for Perry's buyers, and assisting Perry in robbing another drug dealer by pointing a gun at the dealer. There was sufficient evidence to allow the jury to find that Boyer possessed the requisite specific intent to further the drug conspiracy because such an outcome was the probable consequence of his actions. Finally, as with Perry's challenge to the credibility of the witnesses against him, Boyer's suggestion that the witnesses against him were not credible because of their plea agreements with the Government and prior drug use is not a relevant consideration in assessing the sufficiency of the evidence. *United States v. Greenwood*, 974 F.2d 1449, 1458 (5th Cir. 1992).

No. 15-30538

We conclude that sufficient evidence supports Boyer's conspiracy conviction.

## IV. MOTION TO SEVER

Boyer appeals the district court's denial of his pretrial motion to sever his trial from that of his co-defendants. We review a denial of a motion to sever a trial under the "'exceedingly deferential' abuse of discretion standard." *United States v. Whitfield*, 590 F.3d 325, 355 (5th Cir. 2009) (quoting *United States v. Tarango*, 396 F.3d 666, 673 (5th Cir. 2005)). Federal Rule of Criminal Procedure 14(a) provides that a court "may . . . sever the defendants' trials" if the joinder "appears to prejudice a defendant or the government." But "Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." *Zafiro v. United States*, 506 U.S. 534, 538–39 (1993). Giving limiting instructions to the jury is "generally 'sufficient to prevent the threat of prejudice resulting from unsevered trials.'" *Whitfield*, 590 F.3d at 356. In short, the federal judicial system has a "preference . . . for joint trials of defendants who are indicted together." *Zafiro*, 506 U.S. at 537; *see also United States v. Pofahl*, 990 F.2d 1456, 1483 (5th Cir. 1993) ("The rule, rather than the exception, is that persons indicted together should be tried together, especially in conspiracy cases.").

As a result, "[h]istorically, this court has been reluctant to vacate a conviction because the district court refused to sever a trial." *United States v. Owens*, 683 F.3d 93, 98 (5th Cir. 2012) (quoting *United States v. Lewis*, 476 F.3d 369, 384 (5th Cir. 2007)). To warrant vacatur, the defendant must show "specific and compelling prejudice" resulting from the joint trial. *Id.* at 100 (quoting *United States v. Erwin*, 793 F.2d 656, 665–66 (5th Cir. 1986)). In other words, "[t]he defendant must 'isolate events occurring in the course of the trial and then . . . demonstrate that such events caused substantial

prejudice.'" *Id.* at 98 (quoting *Lewis*, 476 F.3d at 384). "The defendant must also show that the district court's instructions to the jury did not adequately protect him . . . from any prejudice resulting from the joint trial." *Id.* Merely alleging a "spillover effect"—whereby the jury imputes the defendant's guilt based on evidence presented against his co-defendants—"is an insufficient predicate for a motion to sever." *United States v. Snarr*, 704 F.3d 368, 397 (5th Cir. 2013) (quoting *United States v. Bieganowski*, 313 F.3d 264, 287 (5th Cir. 2002)).

We reject Boyer's arguments on appeal because they are limited to alleging this general spillover effect; he fails show the specific and compelling prejudice necessary to warrant vacatur. *Owens*, 683 F.3d at 100. Boyer merely complains that the sheer volume of evidence relating to his co-defendants, compared to the relatively small portion relating to him, confused the jurors and impeded their ability to parse out his guilt. He fails to "isolate" any specific prejudicial event at trial, let alone demonstrate that such an event caused him "substantial prejudice." *Id.* (quoting *Lewis*, 476 F.3d at 384). We have held that "severance is required on the basis of disparity in the evidence only in the most *extreme* cases." *Id.* at 100 (quoting *United States v. Rocha*, 916 F.2d 219, 229 (5th Cir. 1990)). And we have rejected a defendant's appeal of the denial of a motion to sever when the defendant merely "'complain[ed] broadly of the volume of evidence, the disparity of evidence between defendants, and a generalized spillover effect,' but '[did not] point[] to any specific prejudice resulting from [his] combined trial.'" *United States v. Stalnaker*, 571 F.3d 428, 435 (5th Cir. 2009) (first alteration in original) (quoting *Lewis*, 476 F.3d at 384).

Further undercutting Boyer's argument is the fact that the district court instructed the jury to separately consider each defendant and count, as well as the evidence as it pertained to each defendant and count. We generally

"presume" that juries "follow the instructions given to them by the district court." *Owens*, 683 F.3d at 100. And here, the jury appears to have followed these instructions, as evidenced by the fact that, among other acquittals, they acquitted Boyer of the two carjacking-related charges against him, as well as the fourth co-defendant of the conspiracy charge. "That suggests that the jury did not blindly convict [the defendant] on spillover evidence but instead gave each defendant and each count separate consideration." *Stalnaker*, 571 F.3d at 435. Accordingly, we conclude that the district court did not abuse its discretion in denying Boyer's motion to sever because it merely alleged a spillover effect and any incidental prejudice was cured through jury instructions.

## V. MOTIONS FOR A NEW TRIAL

Chapman and Boyer appeal the district court's denial of their motions for a new trial. We review a district court's denial of a motion for a new trial for abuse of discretion. *United States v. Piazza*, 647 F.3d 559, 564 (5th Cir. 2011). In reviewing the denial, we are "necessarily deferential to the [district] court because [we] ha[ve] only read the record and, unlike the [district] court, did not see the impact of witnesses on the jury or observe the demeanor of witnesses." *Id.* at 565 (quoting *United States v. Wall*, 389 F.3d 457, 465 (5th Cir. 2004)). The district court's refusal to hold an evidentiary hearing on a motion for a new trial is also reviewed for abuse of discretion. *United States v. Mahmood*, 820 F.3d 177, 190 (5th Cir. 2016).

Federal Rule of Criminal Procedure 33(a) permits the district court to grant a new trial on the motion of a defendant "if the interest of justice so requires." A new trial is not required by the interest of justice "unless there would be a miscarriage of justice or the weight of evidence preponderates against the verdict." *Wall*, 389 F.3d at 466. A new trial may also be warranted based on newly discovered evidence, but such motions "are 'disfavored and

reviewed with great caution.'" *Id.* at 467 (quoting *United States v. Erwin*, 277 F.3d 727, 731 (5th Cir. 2001)).   Ultimately, "the decision to grant or deny a motion for new trial based on the weight of the evidence is within the sound discretion of the trial court." *United States v. Robertson*, 110 F.3d 1113, 1118 (5th Cir. 1997).   We now consider whether the district court abused its discretion in denying Chapman's and Boyer's motions for a new trial.

## A. Chapman

Chapman appeals the district court's denial of a new trial only as to Count 10, under which he was convicted of possession of firearms in furtherance of drug trafficking activity.  Count 10 was based on the guns found in the secret compartment in the Evergreen Street click house in July 2010, and the drug trafficking activity that these guns were allegedly in furtherance of was the drug conspiracy (Count 1) and possession with intent to distribute (Count 9).  Chapman's motion was based on the affidavit from Perry's counsel stating that another individual, John West, had revealed to counsel that he owned the guns that served as the basis for Count 10, intended to sell them, and stored them at the Evergreen Street click house "without . . . Perry's knowledge."  Chapman argues that the district court abused its discretion in denying his motion for a new trial on the basis of this allegedly newly discovered evidence, and also abused its discretion in failing to hold an evidentiary hearing on his motion.

To obtain a new trial based on newly discovered evidence, the defendant must demonstrate: "(1) the evidence is newly discovered and was unknown to the defendant at the time of trial; (2) the failure to detect the evidence was not due to a lack of diligence by the defendant; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence if introduced at a new trial would probably produce an acquittal." *Wall*, 389 F.3d at 467.  Failure to demonstrate any one of these five factors is fatal to the

motion for a new trial. *Id.* The district court assumed without analysis that Chapman's motion satisfied the first four elements but denied the motion because it concluded that the new evidence would not "probably" result in acquittal, the fifth element. Even if we disagree with the district court's conclusion on the fifth element, we may affirm its denial "on any basis supported by the record." *United States v. Causey*, 568 F. App'x 269, 277 (5th Cir. 2014) (per curiam).

Chapman's motion fails on at least four of the elements and thus did not warrant a new trial. First, Chapman did not allege that the evidence was new to him and unknown during the trial. He merely adopted Perry's motion, which stated that *Perry* learned of the information after trial. And the allegedly new evidence itself does not state when West revealed the information to Perry's counsel. The record is therefore silent on whether Chapman knew of this evidence at the time of trial. Second, even if he did not know about the evidence during trial, Chapman failed to show he could not have learned of it through due diligence. Neither Chapman's motion nor Perry's motion, which Chapman adopted, even alleged due diligence. And the record indicates that due diligence would likely have led to discovery of West's testimony before trial. Chapman was given the police report on the search of the Evergreen Street click house that led to the discovery of the hidden guns in May 2013, well over a year before trial. The report identified West as being arrested at the scene and described his statements to police upon arrest. Thus Chapman was aware of West's identity and significance to the gun possession charge well before trial, and due diligence likely would have revealed West's alleged testimony before trial. Third, Chapman did not establish that the evidence was material. The allegedly new evidence was merely an un-notarized written declaration by Perry's counsel restating what West had "revealed" to counsel. Such "representations from defense counsel repeating

No. 15-30538

statements that [the witness with the purportedly new testimony] had made to counsel" are "inadmissible hearsay" and "a motion for new trial may not be based on inadmissible evidence." *Wall*, 389 F.3d at 470–71. Accordingly, this hearsay evidence is not material because it is not admissible.

Finally, as the district court concluded, even if Chapmen met the first four elements, the new evidence, if it was introduced at trial, would not probably result in Chapman being acquitted on Count 10. Count 10 charged possession of a firearm in furtherance of the drug trafficking crimes charged in Count 1 (drug conspiracy) and Count 9 (possession with intent to distribute drugs). To show that possession of a firearm is in furtherance of a drug trafficking offense, the government must show that "it furthers, advances, or helps forward that offense." *United States v. Walker*, 828 F.3d 352, 354 (5th Cir. 2016) (quoting *United States v. Palmer*, 456 F.3d 484, 489–90 (5th Cir. 2006)). Factors relevant in making this determination include:

> [T]he type of drug activity that is being conducted, accessibility of the firearm, the type of weapon, whether the weapon was stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to the drugs or drug profits, and the time and circumstances under which the gun is found.

*Id.* at 354–55 (quoting *Palmer*, 456 F.3d at 490).

There was ample evidence for the jury to find that the guns at issue—recovered from a secret compartment under the kitchen sink in the Evergreen Street click house—were possessed in furtherance of a drug conspiracy. There was testimony that the Evergreen Street house was frequently used for selling and cooking drugs; the secret compartments were used for storing drugs; and 35 grams of cocaine and 77 grams of crack were recovered from the house at the same time the guns were seized, as were other drug paraphernalia. West's statement that he owned the guns, stored them without Perry's knowledge,

and intended to sell them would have not disturbed this finding and Chapman's corresponding liability. First, as the district court noted, the jury likely would not credit West's testimony that Perry was unaware of West's storage of the guns in the secret compartment. Second, even if the jury had credited West's testimony, West does not assert that *Chapman* was unaware of West's storage of the guns, only that *Perry* was. The jury likely would not have inferred from the fact that Perry was unaware of the guns that Chapman was also unaware. Indeed, the jury heard testimony that Chapman knew about and independently used the hidden compartment under the kitchen sink in the Evergreen click house in which the guns were found. And it heard testimony from another individual who spent time in the click house that he had previously seen one of the guns that was ultimately recovered from the secret compartment "around . . . the neighborhood, probably at one of the click houses."

Finally, as the district court noted, even if the jury had credited West's testimony and applied it to Chapman, it implicates rather than exonerates Chapman because it shows that West was a member of the same conspiracy that Chapman was convicted of, and thus Chapman is liable for West's possession of the guns via *Pinkerton* liability. *See United States v. Pierce*, 893 F.2d 669, 675–76 (5th Cir. 1990) ("Under the theory of *Pinkerton*, a conspirator can be found guilty of a substantive offense committed by a coconspirator and in furtherance of the conspiracy, so long as the conspirator's acts are within the reasonably foreseeable scope of the conspiracy."). Although Chapman argues that there would be insufficient evidence for the jury to conclude that West was a co-conspirator, the evidence shows more than West's mere presence and close association with the conspiracy. As Chapman concedes, West's statements that he hid the guns in a secret compartment known to very few in a click house full of drug dealing, drugs, and drug paraphernalia "reasonably

No. 15-30538

raise the inference that West was aware of Perry's activities and that Perry trusted West enough to grant him free access to the Evergreen Street [click] house." This is sufficient to connect West to the conspiracy of which Chapman was a part. *See United States v. Misher*, 99 F.3d 664, 668 (5th Cir. 1996) (stating that an individual's "presence and association with other members of the conspiracy, when supported by other evidence, may be used to support the finding of a conspiracy"). Therefore, even if the jury believed that only West knew about the guns, they had ample evidence that West was a co-conspirator of Chapman's. West's testimony would not likely have resulted in Chapman's acquittal. Given these shortcomings of Chapman's motion for a new trial, the district court did not abuse its discretion in failing to hold an evidentiary hearing on Chapman's motion. *See United States v. Brewer*, 60 F.3d 1142, 1145–46 (5th Cir 1995) (holding defendant not entitled to a hearing on his motion for a new trial where he "failed to prove that his 'new evidence' . . . was in fact newly discovered and that its recent discovery was in no way attributable to a previous lack of diligence").

## B. Boyer

Boyer argues that the district court abused its discretion in denying his motion for a new trial.[11] He asserts two reasons why his motion should have

---

[11] Boyer seems to suggest that we should afford the district court's denial of his motion less than the usual deference because Judge Dick did not observe the beginning of the trial. But he fails to identify any specific testimony or evidence that is relevant for his motion for a new trial and that Judge Dick may have been ill positioned to assess. Rather, he merely complains that Judge Dick only reviewed the "cold record." Judge Dick started presiding over the trial after four days of testimony and presided over four more days of testimony, plus the verdict, post-verdict motions, and sentencing. When she commenced presiding, she certified that she was familiar with the record. *See* Fed. R. Crim. P. 25(a)(2). Indeed, there was a delay in the trial to give Judge Dick time to "review testimony, exhibits, and motions in th[e] case." We have recognized that after such a review of the record, a successor judge is "capable of assessing the credibility of witnesses and the evidence at trial." *United States v. Bourgeois*, 950 F.2d 980, 988 (5th Cir 1992). And successor judges possess the "same discretion" as their predecessors, and can even overturn their predecessor's interlocutory

been granted: (1) the evidence did not support his conviction for conspiracy, and (2) he was unfairly prejudiced by being tried alongside his co-defendants. As to the first reason, we concluded above that sufficient evidence supported Boyer's drug conspiracy conviction. For these same reasons, Boyer's drug conspiracy conviction was not against the weight of the evidence, and thus the district court did not abuse its discretion in denying a new trial on that basis. And as to the second reason, unfair prejudice, this is merely a restatement of Boyer's argument—addressed above—that he was entitled to a severance of his trial from that of his co-defendants. Boyer references no specific evidence or testimony that prejudiced him. Therefore, this argument is baseless for the reasons we discussed in affirming the denial of Boyer's motion to sever.

## VI. CONCLUSION

We VACATE Perry's sentence and REMAND with instructions that the district court recalculate his sentence on Counts 6 and 10 in accordance with this opinion. Otherwise, we AFFIRM the judgment of the district court with respect to Perry, Chapman, and Boyer.

---

orders. *Stoffels ex rel. SBC Tel. Concession Plan v. SBC Commc'ns, Inc.*, 677 F.3d 720, 728 (5th Cir. 2012). Accordingly, we afford Judge Dick's determination that Boyer's verdict was not against the great weight of evidence the usual level of deference.