IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LA

UNITED STATES OF AMERICA  : No. 3:13-cr-00057-JJB-RLB
Plaintiff :
v. : (Judge
:
JEFFERY PERRY :
      Defendant

## BRIEF IN SUPPORT OF
## MOTION FOR COMPASSIONATE RELEASE
## AND REDUCTION OF SENTENCE UNDER 18 U.S.C. § 3582(c)(1)(A)

### I. Introduction

Mr. Perry is 34 years old, ~~##########~~ and faces an imminent risk of death if exposed to the novel coronavirus (COVID-19). (SEE ATTACHMENT "A")

The combination of COVID-19, his physical health, and his living conditions in a crowded prison has the potential to be deadly. Thus, Mr. Perry presents extraordinary and compelling reasons for a reduction in his sentence and compassionate release is appropriate.

### II. Relevant Procedural and Factual History.

In 2013 Your Honor sentenced Mr. Perry to a term of imprisonment of Life+30, and 5 years of supervised release.

He has served 11 years, with no projected release date.

1

Forwarded to the FPD via email

On 02-01-22 due to him being subjected to Covid he requested a motion for compassionate release through his warden. *See* (Attachment A)

On March 30, 2022 Perry filed a *pro se* motion for compassionate release.

III. Mr. J. Perry motion for compassionate release is properly before Your Honor.

    A.     The statute requires only that 30 days have passed from the warden's receipt of a defendant's request for a BOP sponsored motion for compassionate release.

Following amendments made by Section 603 of the First Step Act, defendants may not move for early release from prison for "extraordinary and compelling reasons" under 18 U.S.C. § 3582(c)(1)(A)(i). A defendant may file his

2

own motion for compassionate release, after he has fully exhausted all administrative remedies from the BOP's failure to file a motion *or* the lapse of 30 days from the warden's receipt of his request, ***whichever is earlier.*** 18 U.S.C. § 3582(c)(1)(A) (emphasis added). *See United States v. Haney*, No. 1:19-CR-00541-JSR, 2020 WL 1821988, at *2 (S.D.N.Y. Apr. 13, 2020)(noting that the defendant must either exhaust administrative remedies or wait 30 days). Here, Mr. Perry presented his request to the warden on Febuary 01, 2022 Mr Perry filed his pro se motion on March 30, 2022, more than 30 days after the warden's receipt of the requests. Under the plain language of the statute, Your Honor should proceed to the merits.

Your Honor may also consider Mr. J. Perry additional argument that based on his medical condition he is at greater risk of contracting and dying from COVID-19. *See United States v. Foster*, No. 1:14-CR-00324-JEJ, ECF No. 191 (M.D. Pa. Apr. 3, 2020) (granting compassionate release because of COVID-19 raised in a supplemental motion before the Court). *See also United States v. Bazzle*, No. 2-11-CR-00074-BMS, ECF No. 84 (E.D. Pa. May 5, 2020) (finding that COVID-19 "merely amplifies the risks" that the defendant raised with the warden and determining that the court "will not put form over substance" by

3

requiring a defendant housed at USP Canaan to resubmit a request to the warden with COVID-19 included).[1]

> B. The warden's denial within the 30-day period does not require Mr. J Perry to file an administrative appeal and exhaust administrative remedies.

The 30-day time period and the exhaustion of administrative remedies function separately. A defendant may file on the "earlier" date. Thus, obtaining a negative decision within 30 days does not automatically throw a defendant into the exhaustion category. At the end of the 30 days, while perhaps working toward exhaustion, the defendant may still file a motion with the sentencing court, as that date would be "earlier." Otherwise, the BOP could thwart a defendant's efforts with a warden's immediate response to the initial request and a delay of the subsequent required appeals to the warden (again), the Regional Director and General Counsel.[2] The administrative appeals process would almost always be

---

[1] *But see United States v. Pitt*, No. 1:97-CR-00108-SHR, ECF No's. 525 & 526 (M.D. Pa. May 1, 2020) (denying a motion for compassionate release without prejudice for the defendant to refile after submitting a request based on COVID-19 with the warden of his institution and exhausting administrative remedies or waiting 30 days).

[2] Typically, the initial request of the warden is treated as a "request of staff" on form BP8. *See* Fed. Bureau of Prisons, *Program Statement 1330.18* at 4-5 (Jan. 6, 2014). The next step is to file an appeal at the institutional level, on form BP9, that goes back to the same warden. *See Program Statement 1330.18* at 5. Following a negative ruling on a BP9, the inmate must file a BP10 with the Regional Director, wait for the decision or the passage of any extension period and then file a BP11

more than 30 days and most likely a few months.[3] In amending the compassionate release statute, Congress recognized that time was of the essence for these particular motions.

Congress intended the BOP to use compassionate release more broadly. But, in the event that the BOP refuses, a defendant may now go to the courthouse himself to seek release, just after waiting 30 days. See 18 U.S.C. § 3582(c)(1)(A). Thus, under the plain language of the statute, because 30 days have elapsed since the receipt of his request by the warden, Your Honor may proceed to the merits of Mr. J. Perry motion.

IV. Mr. J. Perry demonstrates "extraordinary and compelling reasons" for release.

A. The Applicable Law

To grant a motion for compassionate release, Your Honor must find extraordinary and compelling reasons that warrant a sentence reduction, after consideration of the factors set forth in 18 U.S.C. § 3553(a) and policy statements issued by the Sentencing Commission. See 18 U.S.C. § 3582(c)(1)(A)(i); U.S.S.G.

---

with the General Counsel to fully exhaust administrative remedies. See 28 C.F.R. § 542.15 ("Appeal to the General Counsel is the final administrative appeal.").

[3] See 28 C.F.R. § 542.18 (a warden has 20 days to respond, a Regional Director has 30 days to respond and General Counsel has 40 days to respond and extensions are permitted to all of those time periods).

5

§ 1B1.3.[4] Congress delegated to the Sentencing Commission the authority to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). The Sentencing Commission describes four "circumstances" that satisfy "extraordinary and compelling reasons" warranting a reduction: (A) medical condition of the defendant; (B) age of the defendant; (C) family circumstances; or (D) "an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13, comment. (n.1).[5] Following the First Step Act, courts are authorized to consider a defendant's motion for compassionate release, even one which the BOP opposes.[6] The commentary also notes that "[t]he court is in a

---

[4] The statute also allows for a sentence reduction for a defendant who is at least 70 years of age and meets other criteria. Mr. J. Perry is and is not seeking relief on the 70-or-over provision.

[5] This "Other Reasons" category provides that the determination should be made by the Director of the Bureau of Prisons. But because Section 1B1.13 has not been amended since the First Step Act, it should not be read to limit a court's discretion. *See, e.g., United States v. Fox*, No. 2:14-CR-03-DBH, 2019 WL 3046086, at *3 (D. Me. July 11, 2019) ("I treat the previous BOP discretion to identify other extraordinary and compelling reasons as assigned now to the courts."); *United States v. Marks*, No. 03-CR-6033L, 2020 WL 1908911, at *7 (S.D.N.Y. Apr. 20, 2020)("when a defendant brings a motion for sentence reduction based on extraordinary and compelling circumstances, the court effectively steps into the shoes of the BOP director, and makes its own determination.").

[6] Notably, when wardens are making decisions about compassionate release, they are guided by BOP Program Statement 5050.50 which differs from the Sentencing

unique position to determine whether the circumstances warrant a reduction (and, if so, the amount of reduction), after considering the factors set forth in 18 U.S.C. § 3553(a) and the criteria set forth in this policy statement[.]" *Id.* (n.4).

A defendant's medical condition presents an extraordinary and compelling reason when "[t]he defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory)" including "end-stage organ disease". *See* U.S.S.G. § 1B1.13, comment. (n.1(A)(i)).

A defendant's medical condition also presents an extraordinary and compelling reason when the defendant is suffering from a serious physical or medical condition that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he is not expected to recover. *See* U.S.S.G. § 1B1.13, comment. (n.1(A)(ii)(I)).

A defendant's age presents an extraordinary and compelling reason when the defendant is at least 65 years old; is experiencing serious deterioration in physical or mental health because of the aging process; and has served at least 10 years or

---

Commission's guidance to the courts in Section 1B1.13. *See United States v. Ramirez*, No. 1:17-CR-10328-WGY (D. Mass. May 12, 2020)(noting that the BOP criteria is far more restrictive). For example, with respect to an illness with an end-of-life trajectory, the Sentencing Commission states that a probability of death within a specific time period is not required. *See* U.S.S.G. 1B1.13, comment. (n.1(A)(i)). Whereas, the BOP requires a life expectancy of 18 months or less. *See* P.S. 5050.50 at 4.

7

75 percent of his or her term of imprisonment, whichever is less. *See* U.S.S.G. § 1B1.13, comment. (n.1(B)).

Finally, the Sentencing Commission included a catchall category for cases that present an extraordinary and compelling reason other than, or in combination with, the defendant's medical condition, age or family circumstances. *See* U.S.S.G. § 1B1.3, comment. (n.1(D)). COVID-19 in combination with a defendant's medical condition thus qualifies as an extraordinary and compelling reason justifying compassionate release.

**B. Mr. J. Perry Extraordinary and Compelling Circumstances.**

The CDC identified those at high risk for severe illness or death from COVID-19 as people over the age of 65, people who live in a nursing home or long term care facility and people of any age with underlying medical conditions specifically listing those with chronic kidney disease undergoing dialysis.[7] The CDC further warns that people who are incarcerated are at a greater risk for the spread of germs because of the close contact and number of people.[8] Because of

---

[7] *See* Centers for Disease Control and Prevention, *Coronavirus Disease 2019 (COVID-19): People Who Are At Higher Risk for Severe Illness*.

[8] *See* Centers for Disease Control and Prevention, *COVID-19 in Correctional and Detention Facilities; Coronavirus Disease 2019 (COVID-19): FAQs for Correctional and Detention Facilities*.

8

his medical conditions, Mr. Jeffery Perry an imminent risk of serious illness or death if exposed to COVID-19.

In his compassionate release request of the warden, Mr. Jeffery Perry identified his particular conditions. *See* (ATTACHMENT "A")

*See United States v. Lacy*, 15-CR-30038, 2020 WL 2093363, at *1 (C.D. Ill. May 1, 2020) (relying on "the Presentence Investigation Report (PSR) prepared for Defendant's sentencing," which documented the defendant's pre-existing conditions); *United States v. Williams*, 3:17-CR-012-VAB, 2020 WL 1974372, at *3 (D. Conn. Apr. 24, 2020) (relying on "history of health problems related to chronic asthma" noted by Probation in PSR prepared "[i]n advance of his sentencing.").

Standing alone, those conditions may not constitute an "extraordinary and compelling" threat to Mr. J. Perry safety. But, with the explosion of COVID-19, that is no longer the case.

Mr. Jeffery Perry risk of contagion in a BOP facility with other inmates[9] is much higher than if he were able to quarantine at home and practice effective social distancing. But with the limited testing at the BOP facilities, the numbers of positive cases posted by the BOP are far from accurate. *See United States v. Scparta*, No. 18-cr-578 (AJN), 2020 WL 1910481, at *3 (S.D.N.Y. Apr. 20, 2020) (noting the confirmed cases at FCI Butner and that "because testing is severely limited, the actual numbers are certainly far higher.").[10]

As a result of his pre-existing medical conditions, the CDC classifies him as "high-risk" of severe illness or death if exposed to COVID-19. That risk is neither hypothetical nor exaggerated. In the past several weeks, inmates have died in BOP custody as a result of COVID-19, and the death toll continues to rise daily. Nor is this risk confined to the elderly. The majority of now-deceased inmates were under the age of 65. And almost all of them, like Mr. suffered from pre-existing medical conditions that the CDC lists as risk factors for developing more severed COVID-19 disease.

---

[9] *See* Fed. Bureau of Prisons, USP CAA last visited 03-31-22, and showing the total inmate population at 1,000+

[10] *See also United States v. Asaro*, No. 17-CR-0127-ARR, 2020 WL 1899221, at *3 (E.D.N.Y. Apr. 17, 2020) (noting that where, there are no reported cases in a facility, "absent more information about how much testing the BOP is conducting, it is possible that undetected cases are present in the facility," and emphasizing that "[t]he virus is spreading" in the state where the federal prison is located).

His risk of contagion in a BOP facility with more than 1,000 other inmates[11] is much higher than if he were able to quarantine at home and practice effective social distancing.

If Your Honor granted compassionate release to Mr. J. Perry based on the combination of COVID-19 and his medical conditions, it would join many other courts who have granted release under similar circumstances. *See e.g.*, *United States v. Bin Wen*, 6:17-CR-06173-EAW, 2020 WL 1845104, at *7 (W.D.N.Y. Apr. 13, 2020) (granting release because "Defendant suffers from asthma, placing him at an increased risk of falling seriously ill from COVID-19"); *United States v. Burrill*, 3:17-CR-0491-RS, 2020 WL 1846788, at *3 (N.D. Cal. Apr. 10, 2020) ("those who suffer from asthma, high blood pressure, and diabetes, are at higher risk of becoming severely ill and dying from COVID-19"); *United States v. Rodriguez*, 2:03-CR-271-AB, 2020 WL 1627331 (E.D. Pa. Apr. 1, 2020) (granting release for an inmate suffering from diabetes because research shows that diabetes patients have mortality rates that are more than twice as high as overall mortality rates).

---

[11] *See* Fed. Bureau of Prisons, *FDC Philadelphia* (last visited May 14, 2020, and showing the total inmate population—both male and female—as 1,036).

V.  **The Section 3553(a) sentencing factors support a finding that a reduced sentence is sufficient but not greater than necessary to accomplish the goals of sentencing.**

In the age of COVID-19, "sufficient but not greater than necessary" takes on new meaning, and particular significance, for vulnerable at-risk inmates. *See United States v. Mel*, TDC-18-0571, 2020 WL 2041674, at *3 (D. Md. Apr. 28, 2020) (finding release appropriate where "the actual severity of the sentence as a result of the COVID-19 outbreak exceeds what the Court anticipated at the time of sentencing.").

For Mr. Jeffery Perry, the service of 11 yrs of his sentence ~~months~~ ~~######~~, adequately reflects the seriousness of his offense and has provided him with just punishment. *See Rodriguez*, 2020 WL 1627331, at *12 (at-risk inmate's service of "the vast majority of his sentence" was "long enough" to meet the goals of sentencing).

His crime was *not* violent. He is not a public safety threat. And he has served his sentence with his physical ailments and discomfort. *See United States v. Williams*, 3:04-CR-95/MCR (N.D. Fla. Apr. 1, 2020)(Doc. 91 at 11)("This means that his sentence has been significantly more laborious than that served by most inmates. It also means that further incarceration in his condition would be greater than necessary to serve the purposes of punishment set forth in § 3553(a)(2).")(quoting *United States v. McGraw*, No. 2:02cr018, 2019 WL

2059488 at *5 (S.D. Ind. May 9, 2019)). Your Honor can fashion a sentence under Section 3582(c)(1)(A) that permits Mr. J. Perry to be confined safely at his home for the remainder of his original term of imprisonment.

Mr. J. Perry is not a danger to the community. And his rehabilitation may be considered with the other factors.[12] [DISCUSS PROGRAMS HE HAS TAKEN. WORK AT INSTUTION, PROGRESS REPORTS ETC.] (SEE ATTACHMENT "B")

VI. Reentry plan

Mr. J. Perry has a solid release plan. He plans to reside with Your Honor can fashion a sentence under Section 3582(c)(1)(A) that permits Mr. J. Perry to be confined safely at home for the remainder of his original term of imprisonment.to### [13]

---

[12] A court should consider post-offense developments under Section 3553(a), which provides "the most up-to-date picture" of the defendant's history and characteristics and "sheds light on the likelihood that [he] will engage in future criminal conduct." See Pepper v. United States, 562 U.S. 476, 492 (2011); see also U.S.S.G. § 1B1.13, comment. (n.3).

[13] Your Honor does not have the authority to simply transfer Mr. Jeffery Perry home confinement for the remainder of his sentence. That authority lies with the BOP. 18 U.S.C. § 3624(c)(2). Your Honor could, however, place him on home confinement for a period, not to exceed the unserved portion of the original term of imprisonment. 18 U.S.C. § 3582(c)(1)(A).

13

Further, in granting a request for compassionate release, Your Honor may impose any other conditions of supervision, including a period of home confinement for the unserved portion of the original term of imprisonment. *See* 18 U.S.C. § 3582(c)(1)(A).

## V. Conclusion

Based on the foregoing, Your Honor should grant Mr. Jeffery Perry. motion for a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A).

Sincerly

Jeffery Perry
USP #06450-095
P.O Box 300
Waymart. PA !8472

14

# CERTIFICATE OF SERVICE

I, __Jeffery Perry__, hereby certify that I have served a true and correct copy of the foregoing:

Compassionate Release Motion

Which is deemed filed at the time it was delivered to prison authorities for forwarding to the court, Houston vs. Lack, 101 L.Ed.2d 245 (1988), upon the court and parties to litigation and/or his/her attorney(s) of record, by placing same in a sealed, postage prepaid envelope addressed to:

Office of the Clerk

and deposited same in the United States Postal Mail at the United States Penitentiary,

Signed on this __30th__ day of __march 2020__

Respectfully Submitted,

Jeffery Perry
USP Canaan
REG. NO. __06450-095__
P.O Box 300
Waymart, PA 18472