UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                                CRIMINAL ACTION

VERSUS                                                              13-57-SDD-RLB

JEFFERY D. PERRY

### RULING

This matter is before the Court on the Motion to Vacate under 28 U.S.C. § 2255[1] filed by Defendant, Jeffery Perry ("Perry"). The Government has filed an Opposition[2] to this motion. Perry contends (1) that he suffered a structural error when his trial counsel, Lance Unglesby ("Unglesby"), conceded his guilt to some of his charges in violation of the principle set forth in *McCoy v. Louisiana*;[3] and (2) this same conduct by Unglesby constitutes ineffective assistance of counsel under *Strickland v. Washington*.[4] For the reasons set forth below, Perry's Motion shall be denied.

### I.    BACKGROUND FACTS & PROCEDURAL HISTORY

Several years ago, law enforcement began an investigation into known Baton Rouge drug dealer Perry, which ultimately revealed Perry to be the leader "of an extensive illegal narcotics operation in South Baton Rouge."[5] The multi-year investigation revealed that "Perry was not only involved in the large-scale distribution of cocaine and crack but

---

[1] Rec. Doc. No. 667.
[2] Rec. Doc. No. 687.
[3] 138 S.Ct. 1500 (2018).
[4] 466 U.S. 668 (1984).
[5] Rec. Doc. No. 687, p. 5.

also engaged in the manufacture of crack, as well as aiding, abetting, and counseling numerous violent acts with firearms."[6] "Perry's organization consisted of many operatives … who assisted him by purchasing drug-making supplies, weighing and bagging the drugs, retrieving drugs from storage locations, interacting with customers who were buying drugs, and disposing of kilogram wrappers."[7] "Over several years, Perry used various houses, referred to as "click houses," in South Baton Rouge, which were largely owned by his family, as distribution centers and headquarters for the organization."[8] These houses were regularly used to cook crack.[9] "Customers who came to the click houses to purchase drugs sometimes used a gun as payment, and Perry stored some of the bartered guns in at least one of the click houses, 221 Evergreen Street. Perry had secret compartments for storing drugs installed over a doorway and under the kitchen sink of the Evergreen Street click house."[10]

> Perry and his associates had several encounters with the Baton Rouge Police Department (BRPD) and Drug Enforcement Administration (DEA) over the years, including selling drugs to DEA confidential informants. BRPD also conducted periodic surveillance and executed multiple search warrants at the click houses, in sum seizing crack, cocaine, drug paraphernalia, large quantities of cash, and guns. In addition to selling drugs, Perry and his operatives also engaged in robbery, carjacking, and unlawful possession of guns. In September 2011, after a multi-year investigation by the DEA and the BRPD, Perry and Chapman were arrested while driving from Houston to Baton Rouge in two separate vehicles with two kilograms of cocaine in Chapman's vehicle.[11]

---

[6] *Id.*
[7] *United States v. Chapman*, 851 F.3d 363, 369 (5th Cir. 2017).
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *Id.*

In 2013, the Government charged Perry and multiple co-defendants with several crimes in a 19-count second superseding indictment.[12] Perry was charged with the following:

> **COUNT ONE**: Conspiracy to Distribute and to Possess with the Intent to Distribute 280 Grams or More of Cocaine Base and Five Kilograms or More of Cocaine;
>
> **COUNT TWO**: Possess with the Intent to Distribute 28 Grams or More of Cocaine Base;
>
> **COUNT THREE**: Possession of Firearm in Furtherance of Drug Trafficking crimes;
>
> **COUNT FOUR**: Distribution of 500 Grams or More of Cocaine;
>
> **COUNT FIVE**: Carjacking;
>
> **COUNT SIX**: Discharging, Carrying, and Using a Firearm During and in relation to a Crime of Violence and a Drug Trafficking Crime;
>
> **COUNTS SEVEN & ELEVEN**: Possession of a Firearm by a Convicted Felon;
>
> **COUNT EIGHT**: Aiding and Abetting the Possession of a Firearm by a Convicted Felon;
>
> **COUNT NINE**: Possession with the Intent to Distribute Cocaine and 28 Grams or More of Cocaine Base;
>
> **COUNT TEN**: Possession of a Firearm in Furtherance of a Drug Trafficking Crime;
>
> **COUNT TWELVE**: Distribution of Cocaine;
>
> **COUNT THIRTEEN**: Distribution of 28 Grams or More of Cocaine Base;
>
> **COUNT FOURTEEN**: Possess with the Intent to Distribute Cocaine Base;
>
> **COUNT FIFTEEN**: Distribution of 280 grams or more of Cocaine Base;
>
> **COUNT SIXTEEN**: Distribution of "Crack" Cocaine;[13]

---

[12] Rec. Doc. No. 88.
[13] Count 16 was withdrawn by the Government prior to trial. Rec. Doc. No. 687, p. 28.

**COUNT SEVENTEEN**: Possess with the Intent to Distribute 500 grams or more of Cocaine.[14]

A jury trial commenced in September 2014, and the jury heard "testimony from over 40 witnesses, including testimony from six co-defendants who had pleaded guilty pursuant to plea agreements, and the introduction of voluminous amounts of evidence."[15] Undercover surveillance video of drug transactions, security video footage, dash cam footage, firearms, narcotics, and seized cash was also presented to the jury.[16] The evidence against Perry was substantial, as held by this Court every time Perry moved for acquittal and/or new trial.[17]

Nevertheless, during opening arguments, Unglesby acknowledged that his client "was, in fact, a drug dealer, and he is guilty of several of these counts."[18] Unglesby also commented that "Jeffery Perry is guilty of selling drugs . . . But the rest of this case is fantasy. . . .";[19] "You are going to convict Jeff Perry of certain counts, but what I ask you not to do is to disassociate yourself from this case because of my admissions, ignore the evidence, and start to buy into what these con artists are saying";[20] and "I've been honest with you-all about the activity of Jeffery Perry. Jeffery Perry is not hiding from the fact that he did deal drugs."[21]

In closing, Unglesby continued this strategy, stating to the jury: "Jeffery Perry, ladies and gentlemen, I told you in the very beginning, he dealt drugs. He dealt a large

---

[14] Rec. Doc. Nos. 88 & 581.
[15] *Chapman*, 851 F.3d at 371 (footnote omitted).
[16] *Id.* at 377.
[17] Rec. Doc. Nos. 457 & 506. The Court acknowledges that not every count was challenged in these motions.
[18] Rec. Doc. No. 572, p. 74, lines 6-7.
[19] *Id.*, lines 18-19; 23.
[20] *Id.* at p. 78, lines 12-16.
[21] *Id.* at p. 80, lines 113-15.

amount of drugs … But I asked that each of you promise me that just because Jeffery Perry dealt drugs you wouldn't shut off and not evaluate this evidence the way it deserves to be."[22] Unglesby then went through each count charged against Perry and conceded Perry's guilt on Counts 4, 9, 12, 13, 14, 15, & 17; he asked the jury to acquit Perry on all other counts.[23] The jury returned a guilty verdict on Counts 1, 2, 4, 5, 6, 7, 8, 9, 10, 11, 13, 14, 15, & 17; the jury acquitted Perry on Counts 3 & 12.[24] Notably, the jury acquitted Perry on Count 12, a count on which Unglesby conceded Perry's guilt.

Perry claims in the pending motion that he "was never advised by his trial counsel he intended to admit guilt at the guilt phase of the proceeding. Petitioner never had the opportunity to concur or reject such strategy, even though counsel felt it may be best trial/case management for some reason."[25] Perry claims he was "never given the right to agree or disagree prior to the time trial commenced."[26] Perry alleges he complained to his counsel after the opening statement that he did not want to concede his guilt to any charge.[27] Perry contends that, after hearing these concessions in the opening statement, he "privately asked why his counsel had done so and told him not to do it again."[28] However, Unglesby continued to concede Perry's guilt as to some counts in closing arguments.

On October 7, 2014, Perry filed a Motion for Judgment of Acquittal or in the Alternative New Trial,[29] which the Court denied.[30] On March 10, 2015, Perry filed another

---

[22] Rec. Doc. No. 577, p. 97, lines 20-25.
[23] *Id.* at pp. 92-124.
[24] Rec. Doc. No. 400.
[25] Rec. Doc. No. 667-1, p. 3.
[26] *Id.*
[27] *Id.* at p. 4.
[28] *Id.*
[29] Rec. Doc. No. 410.
[30] Rec. Doc. No. 457.

Motion for Evidentiary Hearing and New Trial based on purported new evidence,[31] which the Court denied.[32] Neither motion mentioned any objection to counsel's concession strategy at trial.

Perry first came for sentencing on August 19, 2015.[33] Although Perry lodged 18 objections to the Presentence Investigation Report ("PSR"), when the Court questioned Perry about any other objections or comments he may have, he responded, "what the attorney say."[34] When it came time to allocute, Perry apologized to his family for "dragging them through this situation," but maintained that "the prosecutors fabricated a story on me. That it wasn't fully me."[35] Unglesby then addressed the Court, acknowledging Perry's guilt as to some counts but maintaining his innocence on others.[36] The issue of counsel's concession strategy was not raised to the Court at or prior to sentencing.

Unlgesby withdrew as Perry's counsel following his first sentencing, and defense counsel J. David Bourland ("Bourland") was retained to represent Perry on appeal.[37] Perry filed a Notice of Appeal on August 25, 2015.[38] The Government cross-appealed the issue of Perry's sentence.[39] The Government alerted the Court to a potential conflict in Bourland's representation of Perry on appeal, and following a *Garcia* hearing, it was a determined that Bourland would withdraw to avoid an actual conflict or the appearance of one.[40] Defense attorney Mike Walsh ("Walsh") enrolled on behalf of Perry and continued

---

[31] Rec. Doc. No. 465.
[32] Rec. Doc. No. 506.
[33] Rec. Doc. No. 530.
[34] Rec. Doc. No. 544, p. 4, line 16.
[35] *Id.* at p. 13, lines 2-5.
[36] *Id.* at pp. 13-16.
[37] Rec. Doc. No. 614, p. 1.
[38] Rec. Doc. No. 581.
[39] Rec. Doc. No. 545.
[40] Rec. Doc. No. 614. Perry was appointed standby conflict counsel for purposes of the *Garcia* hearing. *Id.*

his representation on appeal.[41] In this first appeal, Perry maintained that the trial evidence was insufficient to support a conviction on count 1, conspiracy.

The Fifth Circuit affirmed Perry's conviction, and the court noted that "Perry admits that he sold large quantities of drugs in individual transactions to individual buyers, but maintains that the evidence indicates that he did so alone, not in concert with others."[42] It is clear from the Fifth Circuit's Mandate that neither appellate counsel raised Perry's objection to Unglesby's concession strategy on appeal.

The Fifth Circuit reversed the Court's sentence of Perry and remanded the matter back to this Court for resentencing. On October 5, 2017, for the first time since his September 2014 trial, Perry raised an objection to Unglesby's concession of guilt at trial:

> I want to mention to the Court that I didn't agree with my attorney then. I didn't advise him, or give him authorization to argue my guilt, saying I'm guilty in his opening statement and closing statement, you know. I went to trial for my innocence, plead my innocence, not admit my guilt. And they got a *McCoy* case that's pending in -- they should rule on it in the winter, whatever.[43]

The Court sentenced Perry to life imprisonment plus 360 months in accordance with the Fifth Circuit's Mandate, and Perry appealed again in October 2017.[44] However, Walsh did not raise the *McCoy* issue in that appeal; the second appeal focused solely on the Court's alleged error in ordering mental health treatment as a condition of supervised release.[45] The Fifth Circuit rejected this argument, finding it was foreclosed because it was not raised during the first appeal.[46]

---

[41] Rec. Doc. No. 615.
[42] *Chapman*, 851 F.3d at 377.
[43] Rec. Doc. No. 656, p. 3.
[44] Rec. Doc. No. 649.
[45] *United States v. Perry*, 739 F. App'x 285, 285 (5th Cir. 2018).
[46] *Id.*

With Bourland's assistance, Perry filed the pending § 2255 motion in September, 2019.[47] On October 30, 2019, the Court granted Bourland's motion to enroll as counsel on behalf of Perry regarding the § 2255 motion.[48] After Bourland was, again, determined to be disqualified due to a conflict following a *Garcia* hearing, Bourland moved to withdraw and Perry proceeded *pro se*.[49] The Government has filed a thorough opposition to Perry's motion.[50]

## II.   LAW & ANALYSIS

### A.   Section 2255

Under 28 U.S.C. § 2255, a federal inmate can file a motion to vacate, set aside, or correct their sentence if, "that sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." The Fifth Circuit has stated that, "[r]elief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised in a direct appeal and would, if condoned, result in a complete miscarriage of justice."[51]

When a defendant has exhausted his right to appeal, his conviction and sentence are presumed to be fair and final.[52] Therefore, an issue raised for the first time in a motion pursuant to 28 U.S.C. § 2255 will be considered only if the defendant shows "cause" for his failure to previously raise the issue and "actual prejudice" resulting from the alleged

---

[47] Rec. Doc. No. 667.
[48] Rec. Doc. No. 676.
[49] Rec. Doc. No. 702.
[50] Rec. Doc. No. 687.
[51] *United States v. Acklen*, 47 F.3d 739, 741 (5th Cir. 1995).
[52] *United States v. Frady*, 456 U.S. 152,164 (1982); *United States v. Shaid*, 937 F.2d 228, 231-32 (5th Cir. 1991)(en banc).

error.[53] Vague or conclusory allegations are insufficient to raise a claim under 28 U.S.C. § 2255.[54]

The pleadings of a *pro se* prisoner litigant are reviewed under a less stringent standard than those drafted by an attorney and are provided a liberal construction.[55] Nevertheless, a *pro se* litigant is still required to provide sufficient facts to support his claims, and "mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue."[56] Accordingly, "[a]bsent evidence in the record, a court cannot consider a habeas petitioner's bald assertion on a critical issue in his *pro se* petition ... to be of probative evidentiary value."[57]

### B.    *McCoy v. Louisiana*[58]

Perry first argues that the *McCoy* decision by the United States Supreme Court applies to his Sixth Amendment claim. Generally, the Court held in *McCoy* that "counsel may not admit [a] client's guilt of a charged crime over the client's intransigent objection to that admission."[59] In *McCoy*, the defendant, on trial for capital murder, instructed his attorney not to concede at trial that he had committed the triple murder of which he was accused.[60] McCoy's attorney, based on the belief that conceding guilt at trial was McCoy's only chance of avoiding the death penalty at the sentencing phase, said in his opening statement that there was "no way reasonably possible" that the jury could not conclude, upon hearing the evidence, that McCoy had caused the victims' deaths.[61] After

---

[53] *Frady*, 456 U.S. at 167-68; *Shaid*, 937 F.2d at 232.
[54] *United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993).
[55] *Haines v. Kerner*, 404 U.S. 519 (1972).
[56] *United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993).
[57] *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983).
[58] ——U.S.——, 138 S. Ct. 1500 (2018).
[59] *Id.* at 1510.
[60] *Id.* at 1506.
[61] *Id.*

being convicted and sentenced to death, McCoy appealed, and the Supreme Court held that a defendant has a Sixth Amendment right to determine whether his attorney will concede factual guilt at trial.[62]

The Court reasoned that "[a]utonomy to decide that the objective of the defense is to assert innocence" is protected by the Sixth Amendment because the proper role of the attorney, as assistant, is to make decisions about "trial management."[63] Strategic or trial management decisions include "what arguments to pursue, what evidentiary objections to raise, and what agreements to conclude regarding the admission of evidence."[64] Decisions reserved to the client "are not strategic choices about how best to achieve a client's objectives; they are choices about what the client's objectives in fact are."[65] While the Court acknowledged that McCoy's decision not to concede factual guilt might not be the wisest strategy for avoiding the death penalty, the Court also articulated that he might have other priorities, such as avoiding the "opprobrium that comes with admitting he killed family members" or "he may hold life in prison not worth living and prefer to risk death for any hope, however small, of exoneration."[66] "Just as a defendant may steadfastly refuse to plead guilty in the face of overwhelming evidence against her ... so may she insist on maintaining her innocence at the guilt phase of a capital trial."[67]

### 1. *McCoy* Claim Procedurally Barred

Perry contends that the violation of his Sixth Amendment right to maintain his innocence constitutes a structural error. The Supreme Court has adopted the general

---

[62] *Id.* at 1512.
[63] *Id.* at 1508.
[64] *Id.* (quoting *Gonzalez v. United States*, 553 U.S. 242, 248, 128 S.Ct. 1765, 170 L.Ed.2d 616 (2008)).
[65] *Id.* (emphasis in original) (citation omitted).
[66] *Id.*
[67] *Id.*

rule that a constitutional error does not require reversal of a conviction if the government can show beyond a reasonable doubt that the error was harmless.[68] However, "certain errors are deemed structural and require reversal because they cause fundamental unfairness, either to the defendant in the specific case or by pervasive undermining of the systemic requirements of a fair and open judicial process."[69] "[T]he defining feature of a structural error is that it 'affect[s] the framework within which the trial proceeds,' rather than being 'simply an error in the trial process itself.'"[70] The *McCoy* Court made clear that an attorney conceding a defendant's guilt at trial over the defendant's explicit objection constitutes a structural error.

Nevertheless, "[c]laims of structural error are not exempt from the required showing of cause and prejudice to excuse a procedural default."[71] The Government maintains that Perry's *McCoy* claim is procedurally barred because he did not contemporaneously object to his lawyer's statements at trial, and he did not raise this issue in his two appeals.[72] Perry makes no mention of procedural default in his motion, and he never requested leave to file a response to the Government's opposition to his § 2255 motion.

---

[68] *Weaver v. Massachusetts*, 137 S. Ct. 1899, 1907 (2017) (citing *Arizona v. Fulminante*, 499 U.S. 279, 306 (1991)); *see United States v. Jones*, 935 F.3d 266, 270 (5th Cir. 2019).
[69] *Weaver*, 137 S. Ct. at 1911.
[70] *Id*. (quoting *Fulminante*, 499 U.S. at 310).
[71] *United States v. Scott*, No. 2020 WL 1030927, *13 (E.D. La. Mar. 3, 2020)(citing e.g., *Engle v. Isaac*, 456 U.S. 107, 128–29 (explaining, in relation to a procedurally defaulted claim brought in a habeas petition, "[w]hile the nature of a constitutional claim may affect the calculation of cause and actual prejudice, it does not alter the need to make that threshold showing")).
[72] Rec. Doc. No. 687, p. 32. The Government concedes there is no non-retroactivity bar to Perry's *McCoy* claim because "Perry's judgment of conviction did not become final until after his second appeal. Perry's judgment of conviction became final after *McCoy* was decided, on January 2, 2019, when the time for Perry to file a petition for certiorari from his second appeal expired. For these reasons, the non-retroactivity of the *McCoy* decision does not prevent relief in this case." *Id*. at pp. 31-32 (citation omitted).

The Fifth Circuit has made clear that, when claims of constitutional or jurisdictional importance are not raised on direct appeal, the claims are procedurally defaulted and can only be considered in a § 2255 proceeding if a movant can show cause for his failure to raise his claims on appeal and actual prejudice resulting from the alleged errors.[73] Alternatively, procedurally defaulted claims can be considered for the first time in a § 2255 proceeding if the movant can show that he is actually innocent.[74] Claims of ineffective assistance of counsel, on the other hand, may be raised for the first time in a proceeding under 28 U.S.C. § 2255.[75] Such a claim can satisfy the cause and prejudice standard to overcome procedural default in a § 2255 petition.[76]

Assuming that Perry has a *McCoy* claim, because Perry did not raise his Sixth Amendment issue on either of his direct appeals, his *McCoy* claim is procedurally defaulted, and he has offered no argument regarding cause and prejudice, nor has he argued or shown in connection with this motion that he is actually innocent. Proving his ineffective assistance of counsel claim could, indeed, excuse this procedural default; however, he must prove prejudice under *Strickland v. Washington* to do so. Because

---

[73] *United States v. Placente*, 81 F.3d 555, 558 (5th Cir.1996) ( "[A] defendant who raises a constitutional or jurisdictional issue for the first time on collateral review must show both cause for his procedural default and actual prejudice due to any such errors."); *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir.1996) ("When raising issues of jurisdictional or constitutional magnitude for the first time on collateral review, a defendant ordinarily must show both cause for his procedural default and actual prejudice resulting from the error."); *United States v. Acklen*, 47 F.3d 739, 741–42 (5th Cir.1995) ("Because a challenge under section 2255 'may not do service for an appeal,' a movant may not raise constitutional or jurisdictional issues for the first time on collateral review without establishing both 'cause' for his procedural default and 'actual prejudice' resulting from the error."); *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir.1991) ("A defendant can challenge his conviction after it is presumed final only on issues of constitutional or jurisdictional magnitude ... and may not raise an issue for the first time on collateral review without showing both 'cause' for his procedural default, and 'actual prejudice' resulting from the error."), *cert. denied*, 502 U.S. 1076 (1992).
[74] *Bousley v. United States*, 523 U.S. 614, 622 (1998) ("Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice' ... or that he is 'actually innocent.'").
[75] *Masaro v. United States*, 538 U.S. 500, 509 (2003).
[76] *United States v. Kallestad*, 236 F.3d 225, 227 (5th Cir. 2000).

Perry fails to establish actual prejudice under *Strickland*, as will be analyzed below, his ineffective assistance of counsel claim does not excuse the procedural default of his *McCoy* claim.

### 2. *McCoy* Inapplicable

The Court finds that Perry has failed to demonstrate a viable *McCoy* claim because, in this Court's view, and in that of most courts across the nation, *McCoy* requires an explicit objection by a defendant, on the record or in the presence of the trial judge, to his attorney's concession of guilt. Federal district courts within the Fifth Circuit have interpreted *McCoy* to require an explicit objection on the record to sustain a *McCoy* claim.

For example, in *Cope v. Vannoy*,[77] Cope was convicted by a jury of first-degree murder and sentenced to life imprisonment.[78] After his appeal was denied, he moved for post-conviction relief, arguing, among several other claims, that the alleged confession of guilt by his trial counsel violated his constitutional rights under *McCoy*.[79] Although the District Court for the Western District of Louisiana held that Cope's *McCoy* claim was not exhausted as required by state law, it also distinguished *McCoy* as follows:

> The Supreme Court observed that McCoy "opposed [counsel's] assertion of his guilt at every opportunity, before and after trial, both in conference with his lawyer and in open court." *McCoy*, 138 S.Ct. at 1509. McCoy's objection was clearly stated and persistent. But here, **there is no indication in the record that Cope ever objected to his attorney's strategy. In fact, Cope does not state when he supposedly objected to the strategy. At no point during opening statement, closing argument, or during recesses, did Cope voice any objection to his attorneys' arguments or theories.** "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance;" that is, a petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial

---

[77] No. 5:18-CV-1445-P, 2019 WL 8918835 (W.D. La. Dec. 16, 2019).
[78] *Id.* at *1.
[79] *Id.* at *16.

strategy.'" *Strickland* 466 U.S. at 689, 104 S.Ct. 2052 (citing *Michel v. State of La.*, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)).[80]

In *Gonzalez v. Lumpkin*, the District Court for the Southern District of Texas addressed a 28 U.S.C. § 2254 motion challenging Gonzalez's state court murder conviction.[81] In his opening argument, Gonzalez's attorney told the jury: "The evidence is going to show the following: that my client, if he did anything, he stole from that man [Bentancourt] after someone killed him; okay."[82] In his motion, Gonzalez claimed that he saw the objective of his defense as making it clear "that he was not guilty of any action that related [to] the murder or robbery of Bentancourt."[83] Further, he claimed that "his counsel's admission[s] were contrary to his objective of admitting nothing."[84]

Like the *Cope* court, the *Gonzalez* court distinguished *McCoy*:

> The Supreme Court has held that "[w]hen a client expressly asserts that the objective of '<u>his</u> defence' is to maintain innocence of the charged criminal acts, his lawyer must abide by that objective and may not override it by conceding guilt." *McCoy v. Louisiana*, —— U.S. ——, 138 S. Ct. 1500, 1509, 200 L.Ed.2d 821 (2018) (emphasis original). This is in contrast to cases where the defendant never asserts any such objective; **the Sixth Amendment is not violated if the client never disavows or protests a lawyer's decision to strategically admit guilt.** *Florida v. Nixon*, 543 U.S. 175, 188, 125 S.Ct. 551, 160 L.Ed.2d 565 (2004). Thus, the Sixth Amendment is violated only when the defendant specifically instructs counsel not to concede any portion of guilt and counsel disregards the client's wishes. *McCoy*, 138 S. Ct. at 1504. Indeed, in *McCoy*, the defendant **"vociferously insisted that he did not engage in the charged acts and adamantly objected to any admission of guilt," and his objections were noted on the record.** *McCoy*, 138 S. Ct. at 1505.

> As the Supreme Court has stated, albeit in a slightly different context, the Court should not grant collateral relief **based solely on "post hoc" assertions from a defendant about his true intentions during trial.** *Lee v. U.S.*, —— U.S. ——, 137 S. Ct. 1958, 1967, 198 L.Ed.2d 476 (2017).

---

[80] *Id.* at *17 (emphasis added).
[81] No. 1:20-cv-190, 2022 WL 509038 (S.D. Tex. Jan. 28, 2022).
[82] *Id.* at *8 (internal quotation marks and citation omitted).
[83] *Id.*
[84] *Id.*

**Rather, courts "should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Id*.**[85]

Earlier this year, in *State v. Brown*, the Louisiana Supreme Court addressed a *McCoy* claim brought by a defendant whose trial counsel "essentially conceded guilt for second degree murder in his opening and closing statements."[86] The *Brown* court easily distinguished the facts of *McCoy* from those in *Brown*, specifically regarding Brown's failure to explicitly object to his counsel's defense strategy:

> In *McCoy*, the defendant "vociferously insisted that he did not engage in the charged acts and adamantly objected to any admission of guilt." *McCoy*, 138 S.Ct. at 1505. However, in this case, there is little indication that defendant objected to the admission of guilt, which is defendant's choice; rather, it appears he objected to trial strategy, which is in counsel's purview. Defendant's objections to counsel arguably stem from a lack of communication and discussion between him and Marinoff, rather than from disagreement as to a specific objective, such as the decision to concede guilt for second degree murder. However, it is unclear whether defendant ever had the opportunity "to insist that counsel refrain from admitting guilt," *McCoy*, 138 S.Ct. at 1505, if he was truly as blind to counsel's strategies as he claimed. … Ultimately, **without defendant's explicit objection to an admission of guilt** and with little evidence that defendant objected to something more than a lack of communication with counsel, this claim fails.[87]

Other federal district courts around the country have interpreted *McCoy* in similar fashion. For example, in *Gonzales v. Sullivan*,[88] the petitioner asserted a *McCoy* claim following his conviction after a criminal trial wherein his trial counsel conceded the petitioner's guilt to the lesser DUI charges. The court distinguished the facts of petitioner's claim from those in *MCoy* : "Here, there is **nothing in the record** suggesting [Petitioner]

---

[85] *Id.* at *8-*9 (emphasis added).
[86] *State v. Brown*, 2016-0998 (La. 1/28/22), --- So.3d ---, 2022 WL 266603, *43.
[87] *Id.* at *44.
[88] No. CV 19-10155-GJS, 2020 WL 2083970, *8 (C.D. Cal. Mar. 25, 2020).

disagreed with his counsel's trial strategy of conceding guilt as to the DUI charges."[89] The court continued:

> As *Lopez* explains, there is no authority "allowing extension of *McCoy*'s holding to a situation where the defendant does not expressly disagree with a decision relating to his right to control the objective of his defense." (*Lopez*, *supra*, 31 Cal. App. 5th at p. 66.) **The record before us does not indicate [Petitioner] disagreed (much less expressly disagreed) with counsel's defense strategy, and *McCoy* is therefore inapplicable**. (*Ibid.*; see also *People v. Franks* (2019) —— Cal. App. 5th ——, 2019 WL 2281530, *4, 248 Cal.Rptr.3d 12 [*McCoy* inapplicable where "**nothing in the record** indicates that [defendant] ever made it clear to his counsel (or the court) that the objective of his defense was to maintain innocence, or that he voiced 'intransigent objection'—or any opposition—to his lawyer's defense strategy."].)[90]

In *Hale v. Shoop*,[91] a case wherein the petitioner claimed his right-to-testify claim fell under *McCoy*, the court distinguished the petitioner's case from *McCoy*, noting that:

> [T]he Court stressed in *McCoy* that the defendant had "**opposed [his counsel's] assertion of his guilt at every opportunity, before and during trial, both in conference with his lawyer and in open court**." *Id.* at 1509. He requested new counsel two days before trial because he disagreed with his attorney's plan to concede guilt; **protested to the court about counsel's strategy outside the presence of the jury**; and, most significantly, testified on his own behalf, maintaining his innocence. *Id.* at 1506–07. **Hale did none of those things**, and *McCoy* does not apply to his right-to-testify claim.[92]

The cases discussed above are in addition to the plethora of similar federal and state court decisions cited by the Government. The Government maintains:

> A clear majority of the decisions interpreting *McCoy* require the record to show proof that the trial court was made aware of the disagreement between counsel and client during trial.
>
> …
>
> Two federal district courts have explicitly rejected *McCoy* claims on the ground that the defendant did not object to his attorney's concession

---

[89] *Id.* (emphasis added).
[90] *Id.* (emphasis added).
[91] No. 2021 WL 1215793 (N.D. Ohio Mar. 31, 2021).
[92] *Id.* at *16 n. 18 (emphasis added).

strategy on the record so that the trial court had the opportunity to address the potential error during the trial. *Austin v. Paramo*, No. CV 15-1699 JLS (SS), 2018 WL 4362082, at *2 (C.D. Cal. 2018) ("In the current case, *McCoy* is inapplicable because the factual predicate of a *McCoy* claim is absent. There is simply no evidence that Petitioner ever voiced 'intransigent objection' or indeed any opposition to his trial counsel's strategic decision … Absent any objection, Petitioner's autonomy was not overridden, *McCoy* is inapplicable … ."); *Julian v. Huss*, No. 17-CV-12211, 2018 WL 3122600, at *9 (E.D. Mich. 2018), *cert. of app. denied sub nom. Julian v. Jackson*, No. 18-1840, 2018 WL 7107923 (6th Cir. 2018) (unpub.) ("The facts of this case are also distinguishable from the Supreme Court's recent ruling in *McCoy* … Julian lodged no such adamant objection and never insisted that his counsel refrain from admitting guilt.") (cleaned up).[93]

Based on the record before the Court, the fact that Perry never made his objection known to this Court, on or off the record, during trial or sentencing, and the reasoning and analyses in the jurisprudence discussed above interpreting *McCoy*, the Court concludes that Perry has failed to preserve a viable *McCoy* claim. There is simply nothing in the record demonstrating that, contemporaneous with the times Unglesby conceded Perry's guilt during opening and closing statements, Perry explicitly objected to Unglesby's trial strategy. There is nothing in the record showing that this Court was put on notice of Perry's objection at trial, and Perry never moved to represent himself or be appointed new counsel. It is undisputed that Perry never raised this issue on appeal.

### C. Ineffective Assistance of Counsel

Perry also moves on the grounds that he had ineffective assistance of counsel based on the same conduct urged under *McCoy*. To obtain relief based upon a claim of ineffective assistance of counsel, the petitioner must show "that counsel's performance

---

[93] Rec. Doc. No. 687, pp. 39-40. The Government goes on to quote from eight various state courts holding the same. *Id.* at pp. 40-42. The Government then discussed a split amongst federal circuit courts of appeal on this issue but maintained that: "The majority position of the courts in America is the correct one; a trial judge cannot commit structural error by permitting a concession defense to go forward over the objection of a defendant unless the judge has notice of a disagreement between client and counsel." *Id.* at p. 44.

was deficient" and "that the deficient performance prejudiced the defense."[94]  To prove deficient performance, the petitioner must demonstrate that counsel's actions "fell below an objective standard of reasonableness."[95]  To prove prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different,"[96] and that "counsel's deficient performance render[ed] the result of the trial unreliable or the proceeding fundamentally unfair."[97] "This does not require that counsel's actions more likely than not altered the outcome, but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters only in the rarest case. The likelihood of a different result must be substantial, not just conceivable."[98]

A defendant must satisfy both prongs of the *Strickland* test to succeed on an ineffective assistance of counsel claim.[99]  A court is not required to address these prongs in any particular order.  If it is possible to dispose of an ineffective assistance of counsel claim without addressing both prongs, "that course should be followed."[100]

Assuming *arguendo* that Perry could show that Unglesby's conduct was constitutionally deficient,[101] Perry's ineffective assistance of counsel claim is doomed by his inability to demonstrate prejudice, *i.e.*, that, "but for counsel's unprofessional errors, the result of the proceeding would have been different."[102]  First, Perry does not allege

---

[94] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).
[95] *Id*. at 688.
[96] *Id*. at 694.
[97] *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).
[98] *Harrington v. Richter*, 562 U.S. 86, 111-112 (2011) (internal quotation marks and citations omitted).
[99] See *Strickland*, 466 U.S. at 697.
[100] *Id.*
[101] The Government concedes that "[t]he existing record does not sustain or refute Perry's allegation that Unglesby's performance was constitutionally deficient." Rec. Doc. No. 687, p. 44
[102] *Strickland*, 466 U.S. at 694.

facts in his § 2255 motion that would undermine the convictions on the counts Unglesby conceded his guilt - Counts 4, 9, 13, 14, 15, and 17 - that, if substantiated and believed, would "show that there is a reasonable probability that, but for counsel's unprofessional [concessions], the result of the proceeding would have been different."[103] Thus, no evidentiary hearing is warranted.

Second, the evidence admitted at trial as to each of these counts was substantial. With regard to prejudice, Perry glosses over his obligation to demonstrate that Unglesby's deficient performance caused a different outcome than his conviction on the counts at issue, stating only: "the insufficient performance by trial counsel by failure to confer with Petitioner and to follow Petitioner's desires after Petitioner learned, subsequent to opening the argument, of the so-called strategy the attorney was pursuing and continued to do so, deprive Petitioner of a fair trial, which caused actual prejudice."[104] This does not satisfy Perry's burden of showing how a different result would have been reached but for Unglesby's concessions.[105]

In *Quezada v. Avoyelles Correction Center*, the court addressed an ineffective assistance of counsel claim wherein the petitioner claimed he was entitled to a presumption of prejudice based on counsel's allegedly deficient performance.[106] The court rejected this argument, noting that the Fifth Circuit has held that, "in the context of ineffective assistance of counsel claims, a structural error alone is insufficient to afford a

---

[103] *Id.*
[104] Rec. Doc. No. 667-1, p. 7.
[105] Notably, the jury's verdict demonstrates that it followed this Court's opening jury instructions when the Court instructed the jury that, "certain things are not evidence and must not be considered by you. Statements, arguments, and questions by lawyers are not evidence." Rec. Doc. No. 572, p. 8, lines 4-6. The jury acquitted Perry on Count 12, a count on which Unglesby conceded Perry's guilt, which suggests the jury followed this Court's admonition not to consider the arguments of counsel as evidence in reaching their verdict.
[106] No. 15-781, 2015 WL 5061230, *7 (E.D. La. Aug. 17, 2015).

presumption of prejudice."[107] Rather, "[i]n order to succeed on such a claim, Petitioner must cite evidence in the record to support specific allegations of 'what the investigation would have revealed and how it would have altered the outcome of the trial.'"[108]

Having failed to present **any** evidence in the record to support this requirement, Perry has failed to demonstrate an ineffective assistance of counsel claim under *Strickland*.[109]

### III.   CONCLUSION

For the reasons set forth above, Perry's Motion to Vacate under 28 U.S.C. § 2255[110] is DENIED.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this 10th day of August, 2022.

_____
**SHELLY D. DICK
CHIEF DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA**

---

[107] *Id.* at *7, n. 63 (citing *Virgil v. Dretke*, 446 F.3d 598, 607 (5th Cir.2006) ("[W]e do not hold that a structural error alone is sufficient to warrant a presumption of prejudice in the ineffective assistance of counsel context."); *see also Torres v. Thaler*, 395 F. App'x 101, 103 (5th Cir.2010)).
[108] *Id.* at *8 (quoting *Moawad v. Anderson*, 143 F.3d 942, 948 (5th Cir.1998)(citing *U.S. v. Green*, 882 F.2d 999, 1003 (5th Cir.1989))).
[109] The Government discusses the substantial evidence connected to each count on which Perry claims he is entitled to a new trial. *See* Rec. Doc. No. 687, pp. 50-59. The Government provides detailed references to the evidence relating to each count and provides accurate record citations for same, which this Court expressly reviewed. In this Court's view, there are no set of facts Perry could urge to overcome the record evidence supporting his convictions on all counts; however, he failed to even try, foreclosing his requested relief.
[110] Rec. Doc. No. 667.